IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| RANCOURT WOODELL, | : | |
| | : | |
| Plaintiff, | : | CIVIL ACTION NO. 18-1098 |
| | : | |
| v. | : | |
| | : | |
| SUPERINTENDENT WENEROWICZ, | : | |
| et al., | : | |
| | : | |
| Defendants. | : | |

## MEMORANDUM OPINION

Smith, J.                                                                                      August 30, 2019

The *pro* se plaintiff, a life prisoner currently incarcerated in a state correctional institution, in another attempt to plead a claim for relief, brings the instant action under 42 U.S.C. § 1983 against more than 70 defendants. In the amended complaint, the plaintiff alleges that these defendants, who are either medical services professionals or state correctional employees, violated his civil rights because they changed the prison's grievance policy, interfered with his ability to challenge his criminal conviction, acted with deliberate indifference to his serious medical needs, and—as to the institutional defendants—are liable pursuant to *Monell v. Department of Social Services of the City of New York*, 436 U.S. 658 (1978).

Most of the named defendants, and several unnamed individuals, moved to dismiss the amended complaint under Rule 12(b)(6) of the Federal Rules of Civil Procedure. The moving defendants argue that the court should dismiss the amended complaint because the two-year statute of limitations bars the lion's share of his claims and any timely allegations fail to state a claim for relief. The plaintiff failed to file a response to the motions to dismiss; however, he filed two motions requesting a variety of relief, namely that the court consider certain facts not averred in

his amended complaint (via supplementation of his complaint or judicial notice), two forms of injunctive relief, and discovery. After a thorough review of the 58-page amended complaint and supplemental filings, the court agrees with the moving defendants and grants their motions to dismiss because several of the plaintiff's claims are untimely and, with respect to his timely claims, he fails to state a claim for relief.

## I. PROCEDURAL HISTORY

On March 11, 2018, the *pro se* plaintiff, Rancourt Woodell ("Woodell"), commenced this action by filing an application for leave to proceed *in forma pauperis* ("IFP"), prisoner trust fund account statement, complaint, and motion for a temporary restraining order ("TRO").[1] Doc. Nos. 1, 2. Because Woodell failed to file a certified prisoner account statement covering the relevant six-month period, the court entered an order on March 16, 2018, denying the IFP application without prejudice to Woodell filing a proper certified account statement. *See* Order at 2–3 & n.1, Doc. No. 3. Woodell promptly filed a new IFP application and certified account statement on March 26, 2018. Doc. Nos. 4, 5. The court entered an order on March 28, 2018, which, *inter alia*, granted the IFP application and directed the clerk of court to docket the complaint. *See* Order 1–2, Doc. No. 6. On the same date, the clerk of court docketed the complaint. Doc. No. 7.

Concerning the complaint, Woodell identified numerous defendants in the caption of the complaint.[2] Compl. at ECF pp. 1–6. Woodell generally alleged that the defendants violated his

---

[1] The federal "prisoner mailbox rule" provides that a *pro se* prisoner's petition is deemed filed "at the time petitioner delivered it to the prison authorities for forwarding to the court clerk." *Houston v. Lack*, 487 U.S. 266, 275−76 (1988). Although the doctrine arose in the context of habeas corpus petitions, the Third Circuit has extended it to civil actions brought under 42 U.S.C. § 1983. *See Pearson v. Secretary Dep't of Corr.*, 775 F.3d 598, 600 n.2 (3d Cir. 2015) (applying rule in section 1983 action and determining that *pro se* prisoner plaintiff filed complaint on date he signed it). Here, Woodell included a declaration with the complaint in which he states that he provided the complaint to prison authorities on March 11, 2018. Compl. at ECF p. 28, Doc. No. 7. The court uses this date as the filing date.
[2] Unfortunately, as the complaint was not a model of clarity, it was difficult to discern the named defendants. Nonetheless, it appeared that Woodell named multiple correctional institutions and entities as defendants along with numerous individuals employed by or at those entities. *Id.* at ECF pp. 1–6.

constitutional rights because they were deliberately indifferent to his serious medical needs from 2011 until August 2015. *Id.* at ECF pp. 3–24. However, he also included a single reference that certain unspecified acts were occurring in 2018. *Id.* at ECF p. 3.

Woodell filed a motion seeking the appointment of counsel and a "Motion for Judicial Notice" that the clerk of court docketed on April 18, 2018. Doc. Nos. 12, 13. In the "Motion for Judicial Notice," Woodell alleged that he had an emergency right temporal lobectomy on March 28, 2016. Mot. for Judicial Notice at 1, Doc. No. 13. He also asserted that he had not visited with the assigned neuro-science specialist from Temple University since December 2017, despite the specialist requiring 60-day follow-up appointments. *Id.* He also mentioned an incident in April 2018, where he indicated to a corrections officer that he was going to have a seizure. *Id.* at 2. Woodell alleged that a nurse evaluated him, but an altercation occurred after which the nurse created an incident report. *Id.* Based on these allegations, Woodell requested that the court enter a TRO or preliminary injunction to allow an independent medical facility to examine him. *Id.*

On April 20, 2018, the court entered an order which, *inter alia*, (1) referred the matter to the Prisoner Civil Rights Panel ("Panel") for a period of 60 days to see if a Panel member would represent Woodell and (2) scheduled a telephone conference to discuss the "Motion for Judicial Notice." *See* Order at 1–2, Doc. No. 14. The court held a telephone conference with Woodell and defense counsel of record on May 3, 2018. Doc. No. 27. After the conference, the court set a deadline for the defendants to respond to the "Motion for Judicial Notice," stayed the time for the defendants to file responses to the complaint, and scheduled another telephone conference to discuss the motion. Order at 1, Doc. No. 28. Thereafter, various defendants timely filed responses to the "Motion for Judicial Notice." Doc. Nos. 37–40, 42.

The court held a telephonic hearing with Woodell and defense counsel of record on June 20, 2018. Doc. No. 43. After the hearing, the court entered an order which, *inter alia*, denied the "Motion for Judicial Notice" insofar as it sought a TRO or preliminary injunctive relief, and directed the defendants of record to file responses to the complaint.[3] *See* Order at 1–2, Doc. No. 44.

On June 22, 2018, Woodell filed another "Motion for Judicial Notice" related to his claims of unconstitutionally deficient medical treatment in May 2018. *See* Mot. for Judicial Notice, Doc. No. 46. On the same date, the defendants, Stephen Kaminsky ("Kaminsky"), Dr. Frederick Klemick ("Dr. Klemick"), Dr. Mohammed Golsorkhi ("Dr. Golsorkhi"),[4] Barbara Ruminski ("Ruminski"), Jeanne DeFrangesco ("DeFrangesco"), Dr. Haresh Pandya ("Dr. Pandya"), and Dr. Stephen Wiener ("Dr. Wiener"),[5] filed a motion to dismiss the complaint. Doc. No. 45. Shortly thereafter, on June 28, 2018, the defendant, Dr. Elisabeth Vonzemensky ("Dr. Vonzemensky"), filed (1) a response to the "Motion for Judicial Notice," and (2) a motion to dismiss the complaint or, in the alternative, a motion for summary judgment.[6] Doc. Nos. 47, 48. Woodell filed a response to the two motions to dismiss on July 2, 2018. Doc. No. 49.

The defendants, Michael Wenerowicz ("Wenerowicz"), Dorina Varner ("Varner"), Gerald Galinski ("Galinski"), Suzanne Karpinski ("Karpinski"), Laura Banta ("Banta"), George Ondrejka ("Ondrejka"), Joseph Terra ("Terra"), Jeffrey Baker ("Baker"), Althea King ("King"), Donald Whitfield ("Whitfield"), Joseph Korszniak ("Korszniak"), Robert Grossman ("Grossman"), Rhonda House ("House"), Louis Bozelli ("Bozelli"), Kenneth Randolph ("Randolph"), Debra

---

[3] During the hearing and in the order, the court noted that no member of the Panel agreed to represent Woodell in this matter.
[4] Woodell misspells this defendant's last name as "Gorosikol" in the amended complaint. *Id.* at ¶ 18.
[5] Woodell misspells this defendant's last name as "Weiner[.]" Am. Compl. at ¶ 19.
[6] Dr. Vonzemesky asserts that she is incorrectly identified in the complaint as Dr. Vontersky. She is referred to as Dr. Vonzemesky throughout the opinion.

Hawkinberry ("Hawkinberry"), Joseph Trempus ("Trempus"), Ida DiCio ("DiCio"),[7] Noel Ranker ("Ranker"), Carl Walker ("Walker"), Eric Armel ("Armel"), Brian Coleman ("Coleman"), Susan Berrier ("Berrier"), Steven Gates ("Gates"), Edward Manchas ("Manchas"),[8] Michael Zaken ("Zaken"),[9] Shirley Moore-Smeal ("Moore-Smeal"), Raymond Moore ("Moore"), Robert Marsh ("Marsh"), Cynthia Link ("Link"), Jay Lane ("Lane"), and Marirosa Lamas ("Lamas"), filed a motion to dismiss the complaint on July 11, 2018. Doc. No. 50. A day later, Dr. Martinez, Dr. Mohata, Dr. Saavedra, and Dr. Burke collectively filed a motion to dismiss the complaint.[10] Doc. No. 51. On July 20, 2018, the defendant, Robert Ellers ("Ellers"), filed a motion to dismiss the complaint. Doc. No. 54. The defendants, Raymond Machak ("Dr. Machak")[11] and Dr. Ferdinand Christian ("Dr. Christian"), filed a motion to dismiss the complaint or, in the alternative, a motion for summary judgment, on July 24, 2018. Doc. No. 58. DeFrangesco and Kaminsky jointly filed a motion to dismiss the complaint or, in the alternative, a motion for summary judgment on August 7, 2018. Doc. No. 64. On August 15, 2019, Woodell filed a supplemental response to the pending motions, including the motions for summary judgment. Doc. No. 66.

After reviewing the complaint and the various motions to dismiss and, to streamline this matter, the court held another telephonic hearing with Woodell and defense counsel of record on August 14, 2018. Doc. No. 65. During the hearing, the court identified the various issues with the complaint and heard from both Woodell and defense counsel. Woodell agreed that he would attempt to remedy the identified deficiencies by amending his complaint. As such, the court entered an order on August 15, 2018, in which the court (1) provided Woodell with an ample

---

[7] Woodell refers to this defendant as "RN Ida." *Id.* at ¶ 45.
[8] Woodell refers to this defendant as "Captain Manchas" in the amended complaint. *Id.* at ¶ 23.
[9] Woodell refers to Zaken as "Captain Zaken" in the amended complaint. *Id.* at ¶ 23.
[10] Dr. Saavedra indicates that the complaint incorrectly identified him as "Dr. Savareedra."
[11] Given the similarity in their names in the amended complaint, the court considers Dr. Raymond Machak and Dr. Raymond Manchak to be the same individual.

period to file an amended complaint, (2) denied the motions to dismiss without prejudice, and (3) denied the "Motion for Judicial Notice" without prejudice. *See* Order at 1–2, Doc. No. 67. In the order, the court also explained to Woodell that he

> must allege specifically how any defendant named in the caption of the amended complaint acted with deliberate indifference to his serious medical needs—*i.e.* reckless disregard of a substantial risk of serious harm. *See Giles v. Kearney*, 571 F.3d 318, 330 (3d Cir. 2009). Additionally, as explained to Woodell during the telephonic hearing, he should be cognizant of the applicable statute of limitations in determining the allegations he wishes to raise in the amended complaint.

*Id.* at 1.

Woodell filed an amended complaint on October 17, 2018.[12] Doc. No. 72. Unfortunately, whereas Woodell named numerous defendants by attaching five additional pages of names to append to the caption of the original complaint, here, he referenced one named defendant in the caption and then used "et al." *See* Am. Compl. at ECF p. 1, Doc. No. 72. In a supplemental filing, Woodell claims the amended complaint asserts claims against "[s]eventy-two [d]efendants[.]" Mot for Leave to File Supp., Prelim. Injunction and/or Judicial Notice to Am. Compl. ("Second Supp.") at 1, Doc. No. 81. Nonetheless, after reviewing the body of the amended complaint, it appears that Woodell attempts to assert claims against approximately 76 defendants, including the Commonwealth of Pennsylvania Department of Corrections ("DOC"), State Correctional Institution–Graterford ("SCI–Graterford"), State Correctional Institution–Rockview ("SCI–Rockview"), State Correctional Institution–Fayette ("SCI–Fayette"), Wexford Health Care ("WHC"), Correct Care Solutions ("CCS"), and the "Bureau of Health Care Services."[13] *Id.* at ¶¶

---

[12] Prior to filing the amended complaint, Woodell had filed yet another "Motion for Judicial Notice," another IFP application, and another copy of his prisoner trust fund account statement. Doc. Nos. 69–71.

[13] Woodell alleges that he was confined at SCI–Rockview from March 25, 2005, to December 9, 2009, at SCI–Fayette from December 9, 2009 to December 20, 2011, and SCI–Graterford from December 20, 2011 until its closure in July 2018. Am. Compl. at ¶ 12. He is now incarcerated at SCI–Phoenix. *Id.* He asserts that WHC and CCS provided medical services for the each of these SCIs during his periods of incarceration. *Id.* at ¶¶ 18, 19.

13–24, 26. With respect to the individual defendants, Woodell appears to assert claims against the following individuals (grouped by employer/place of employment):[14]

- SCI–Fayette: Manchas, Trempus, Counselor Clark ("Clark"), Zaken, DiCio, RN Nole ("Nole"), Coleman, Walker, Chris Myers ("Myers"), Hawkinberry, Dr. Bolk, Dr. Savareedra, Armel, Randolph, Bozelli, M. Bzelte, Michelle Howard-Biggs ("Howard-Biggs"), Moore, House, Marsh,[15] Moore-Smeal, Gates, and Berrier (collectively, the "Fayette Defendants"). *Id.* at ¶¶ 22, 23.

- SCI–Rockview: Coffman, Dr. Burke, Dr. John Synmons ("Dr. Synmons"), Franklin Tennis ("Tennis"), Marsh, Lamas, and Ellers (collectively, the "Rockview Defendants"). *Id.* at ¶ 24.

- SCI–Graterford:[16] King, Link, Dr. Martinez, Dr. Mohata, Dr. Vonzemensky, Korszniak, Major Dohman ("Dohman"), and Wenerowicz.[17] *Id.* at ¶¶ 13, 14, 17, 21, 60.[18]

- DOC: Varner and Tracey Williams ("Williams"). *Id.* at ¶ 22.

- CCS: Dr. Schariff and Dr. Wiener. *Id.* at ¶¶ 15, 18, 19, 20, 58, 60, 75.

- WHC: Dr. Banbridge, Dr. Pandya, Dr. Golsorkhi, Dr. Biggie, Dr. Blatt, Dr. Lewis, Dr. Machak, Dr. Smith, Dr. Tobin, Dr. Klemick, and Dr. Gek.[19] *Id.* at ¶ 18.[20]

- Bureau of Health Care Services: Dr. Balk and Ruminski. *Id.* at ¶ 20.

---

[14] Woodell asserts that he is suing these defendants in their official and individual capacities. *See id.* at ¶¶ 6, 7. The court attempted to group individuals with certain entities based on Woodell's allegations. The court notes that it appears Woodell failed to correctly match some individuals to their employers based on the alignment of parties in the motions to dismiss.

[15] Marsh worked at both Fayette and Rockview. *See id.* at ¶ 23 (describing Marsh as working at SCI–Fayette from 2009–2011); *id.* at ¶ 24 (describing Marsh as working at SCI–Rockville from 2005–2009).

[16] Woodell refers to SCI–Graterford as "SCIG" in his amended complaint. *Id.* at ¶ 13.

[17] In 2018, SCI–Graterford closed. *Id.* at ¶¶ 18, 19. It appears that a few of the SCI–Graterford employees transitioned to SCI–Phoenix; however, Woodell does not specifically allege which individuals transitioned to SCI–Phoenix.

[18] Woodell alleges that King, Dr. Mohata, Dr. Martinez, and Dr. Vonzemensky were part of "SCIG Mental Health" which operated at SCI–Graterford. *Id.* at ¶ 21.

[19] Woodell failed to timely serve the WHC Defendants as his summons was returned unexecuted. *See* Unnumbered Docket Entry After Doc. No. 31 ("Copy of Order dated 3/28/18 and envelope returned from the U.S. Postal Service addressed to DR. BANBRIDGE for the following reason: PERSON NOT AT WEXFORD HEALTH CORP. (ky, ) (Entered: 05/23/2018)"); Unnumbered Docket Entry After Doc. No. 33 ("Copy of Order dated 3/28/18 and envelope returned from the U.S. Postal Service addressed to DR. BANBRIDGE for the following reason: PERSON NOT AT WEXFORD HEALTH CORP. (ky, ) (Entered: 05/23/2018)").

[20] As to Dr. Pandya and Dr. Golsorkhi, Woodell alleges that both doctors are employed by WHC; however, CCS employs them both. Am. Compl. at ¶ 18; Mem. of L. in Supp. of Defs.' Correct Care Solutions, LLC, Stephen Kaminsky, Pa-C, Dr. Frederick Klemick, Dr. Mohammad Golsorkhi, Barbara Ruminski, Jeanne DeFrangesco, CRNP, Dr. Haresh Pandya, and Dr. Stephen Wiener's Mot. to Dismiss Pl.'s Compl. ("CCS Mem.") at 1, Doc. No. 75-1.

- <u>Unaffiliated</u>: John/Jane Does, Bolger, Dr. Christian, Ondrejka, Galinski, Lane, DeFrangesco, Baker, Terra, Banta, Karpinski, and Grossman. *Id.* at ¶¶ 19, 58.[21]

On October 31, 2018, Wenerowicz, Varner, Galinski, Karpinski, Banta, Ondrejka, Terra, Baker, King, Whitfield,[22] Korszniak, Grossman, House, Bozelli, Randolph, Hawkinberry, Trempus, DiCio, Ranker, Walker, Armel, Coleman, Berrier, Gates, Manchas, Zaken, Moore-Smeal, Moore, Marsh, Link, Lane, Lamas, and Richard Ellers ("Ellers") (collectively "Commonwealth Defendants").[23] Doc. No. 74. On the same day, (1) CCS, Kaminsky, Dr. Klemick, Dr. Golsorkhi, Ruminski, DeFrangesco, Dr. Pandya, and Dr. Wiener (collectively the "CCS Defendants"), (2) Dr. Martinez, Dr. Mohata, Dr. Saavedra and Dr. Burke (collectively the "Mental Health Defendants"), and (3) Dr. Vonzemensky, separately moved to dismiss the amended complaint.[24] Doc. Nos. 73, 75, 76.

Woodell did not file a response to any of the three pending motions to dismiss; however, he filed a "motion for leave to file supplement, preliminary injunction and/or judicial notice to the amended complaint" on January 24, 2019. Second Supp. at ECF p. 1. The Commonwealth Defendants filed response in opposition to this motion. Doc. Nos. 82. Dr. Vonzemensky, Dr. Savareedra, and the CCS Defendants joined the Commonwealth Defendants' response in opposition. Doc. Nos. 83, 84, 85. Several months later, on June 28, 2019, Woodell moved for an

---

[21] As to Ondrejka, Galinski, Lane, Baker, Terra, Banta, Karpinski, the Commonwealth Defendants represent that said individuals worked at SCI–Graterford. Mem. of Law in Supp. of Commonwealth Defs.' Mot. to Dismiss Compl. ("Commonwealth Defs.' Mem.") at 3–4, Doc. No. 74. As to DeFrangesco, the CCS Defendants claim CCS employs her. CCS Mem. at 1. The court presumes most of these defendants worked directly for the DOC at one of the facilities. However, the amended complaint fails to specify where these parties work.

[22] Woodell does not name Whitfield; however, he is included in the Commonwealth Defendants' motion to dismiss. Doc. No. 74. According to the Commonwealth Defendants, Whitfield worked at SCI–Graterford. Commonwealth Defs.' Mem. at 4 and n.4.

[23] Ellers did not join the original motion to dismiss filed by the Commonwealth Defendants.

[24] Dr. Vonzemensky also filed another motion to dismiss, presumably in response to Woodell's supplemental filing. Doc. No. 77.

emergency TRO, preliminary injunction, and a medical examination. Doc. No. 86. None of the defendants opposed the motion.[25]

The motions to dismiss and Woodell's two motions for miscellaneous relief are now ripe for disposition.

## II. DISCUSSION

### A. Standard of Review – Motions to Dismiss Under Rule 12(b)(6)

Federal Rule of Civil Procedure 12(b)(6) allows a party to move for dismissal of a complaint or a portion of a complaint for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). A motion to dismiss under Rule 12(b)(6) tests "the sufficiency of the allegations contained in the complaint." *Kost v. Kozakiewicz*, 1 F.3d 176, 183 (3d Cir. 1993) (citation omitted).[26] As the moving party, "[t]he defendant bears the burden of showing that no claim has been presented." *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005) (citation omitted). In addition, in reviewing a *pro se* plaintiff's complaint, the court must liberally construe the allegations set forth in the complaint. *See Higgs v. Att'y Gen.*, 655 F.3d 333, 339–40 (3d Cir. 2011) (explaining that "when presented with a *pro se* litigant, we have a special obligation to construe his complaint liberally" (citation and internal quotation marks omitted)).

In general, a complaint is legally sufficient if it contains "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "The touchstone of [this] pleading standard is plausibility." *Bistrian v. Levi*, 696 F.3d 352, 365 (3d Cir. 2012).

---

[25] Dr. Vonzemensky filed a response stating she takes no position on the motion. Doc. No. 87 at 2.

[26] "To decide a motion to dismiss, courts generally consider only the allegations contained in the complaint, exhibits attached to the complaint and matters of public record." *Pension Ben. Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993). Courts also "may consider an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document." *Id.* Here, the court declines to convert the motions to dismiss into motions for summary judgment. However, the court considered matters of public record, exhibits attached to the motion to dismiss, and grievances expressly referenced in the amended complaint.

Although Rule 8(a)(2) does "not require heightened fact pleading of specifics," it does require the recitation of "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). In other words, "[t]he plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quotation omitted). "In ruling on a 12(b)(6) motion, courts can and should reject legal conclusions, unsupported conclusions, unwarranted references, unwarranted deductions, footless conclusions of law, and sweeping legal conclusions in the form of actual allegations." *Bright v. Westmoreland Cty.*, 380 F.3d 729, 735 (3d Cir. 2004) (citation and internal quotation marks omitted). Ultimately, a complaint must contain facts sufficient to nudge any claim "across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570.

## B. Standard of Review of Complaints Under 28 U.S.C. § 1915(e)(2)(B)

Because the court has granted Woodell leave to proceed *in forma pauperis*, the court can review the amended complaint to determine whether it is frivolous, malicious, fails to state a claim upon which relief can be granted, or asserts a claim against a defendant immune from monetary relief. *See* 28 U.S.C. § 1915(e)(2)(B)(i)–(iii) (providing that "[n]otwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that-- . . . **(B)** the action or appeal-- **(i)** is frivolous or malicious; **(ii)** fails to state a claim on which relief may be granted; or **(iii)** seeks monetary relief against a defendant who is immune from such relief"). A complaint is frivolous under section 1915(e)(2)(B)(i) if it "lacks an arguable basis either in law or fact," *Neitzke v. Williams*, 490 U.S. 319, 325 (1989), and is legally

baseless if it is "based on an indisputably meritless legal theory." *Deutsch v. United States*, 67 F.3d 1080, 1085 (3d Cir. 1995). As for whether a complaint is malicious, "[a] court that considers whether an action is malicious must, in accordance with the definition of the term 'malicious,' engage in a subjective inquiry into the litigant's motivations at the time of the filing of the lawsuit to determine whether the action is an attempt to vex, injure or harass the defendant." *Id.* at 1086. "[A] district court may dismiss a complaint as malicious if it is plainly abusive of the judicial process or merely repeats pending or previously litigated claims." *Brodzki v. CBS Sports*, Civ. No. 11-841, 2012 WL 125281, at *1 (D. Del. Jan. 13, 2012). The standard for dismissing a complaint for failure to state a claim pursuant to section 1915(e)(2)(B)(ii) is identical to the legal standard used when ruling on motions to dismiss under Federal Rule of Civil Procedure 12(b)(6). *See Tourscher v. McCullough*, 184 F.3d 236, 240 (3d Cir. 1999) (applying Rule 12(b)(6) standard to dismissal for failure to state a claim under § 1915(e)(2)(B)).

## C.     Factual Allegations

In general, Woodell asserts that the defendants "deliberately delay[ed] and den[ied] immediate, adequate and proper needed medical treatment to [his] serious diagnosed mental health ('panic attacks') and medical ('seizures') conditions" and failed to provide him adequate treatment once he informed them and/or they witnessed a panic attack or a seizure. Am. Compl. at ¶ 2. Woodell claims that the defendants, when contacted by correctional officers, prisoners, or even medical professionals, (1) refused to physically examine or treat him for allegedly visible physical injuries, (2) mocked him, belittled him, and accused him of faking and lying about his medical issues, (3) punished him by placing him in an isolated restricted housing unit or "Psychological Observation Cells" (also referred to as "POC") for 42 consecutive months, and (4) prescribed him "a number of psychotropic and experimental medications that neurology declared made [his]

medical condition worse, led to deterioration, his emergency brain surgery and other medical problems and needed treatments[.]" *Id.* at ¶¶ 3, 4, 7, 10. Woodell further alleges that his challenges to his underlying criminal convictions became time-barred due to the defendants' conduct. *Id.* at ¶ 3.

Along with the aforementioned allegations, Woodell asserts that the defendants failed to properly examine or diagnose him, in part, because they lacked the necessary qualifications to do so insofar as they were not neurologists. *Id.* at ¶ 7. The defendants also "spread the word amongst medical personnel (e.g., nurses, doctors, etc.) that [he] was faking and lying about having/having [sic] had a 'panic attack and/or seizure'" despite other individuals witnessing the panic attack or seizure. *Id.* at ¶ 8. Woodell alleges that these false statements caused the other medical personnel to not respond to calls relating to Woodell's care if the initiating report was that he was suffering from a panic attack or a seizure. *Id.*

Generally, Woodell fails to allege *when* the alleged violations occurred and *who* committed said violations; however, the court can discern a general timeline based on where Woodell resided at the time of the complained-of behavior. Woodell resided at SCI–Rockview from March 25, 2005 until December 9, 2009. *Id.* at ¶ 35. At that time, DOC transferred Woodell to SCI–Fayette. *Id.* Woodell remained at SCI–Fayette from December 9, 2009 until December 20, 2011. *Id.* at ¶ 12. From December 20, 2011 until July 12–15, 2018, Woodell resided at SCI–Graterford. *Id.* When SCI–Graterford closed in July 2018, DOC transferred Woodell to SCI–Phoenix. *Id.*

### D.  <u>Analysis</u>

Woodell asserts several section 1983 claims in his amended complaint and supplemental filing: (1) two Eighth Amendment claims (deliberate indifference to serious medical needs and a conditions of confinement claim), (2) a claim related to DOC's changes to the grievance policy,

(3) a First Amendment access to courts claim, and (4) a *Monell* claim against CCS, WHC, the four SCIs, and the DOC.[27] To sift Woodell's viable claims from the non-viable, the court first discusses whether certain defendants, as state employees and/or arms of the state, are amenable to suit under section 1983, the timeliness of each claim, and the basic section 1983 pleading requirement that a plaintiff allege each defendant's personal involvement.[28] Then the court discusses the merits of Woodell's surviving section 1983 claims—changes to the grievance policy, access to courts, deliberate indifference to serious medical needs, and *Monell*.

---

[27] The court did not identify any medical malpractice claims in the amended complaint because Woodell frames his allegations in the context of deliberate indifference—a uniquely federal cause of action. However, both Dr. Vonzemensky and the Mental Health Defendants seek dismissal of any medical malpractice claims against them because Woodell did not file a certificate of merit. Mem. of L. in Supp. of Def., Elisabeth Vonzemensky, M.D.'s (Incorrectly Identified as Dr. Vontersky) Mot. to Dismiss Pl.'s Am. Compl. with Prejudice or in the Alternative for Summ. J. ("Vonzemensky Mem.") at 8–9, Doc. No. 73; Br. in Supp. of Mot. to Dismiss Pl.'s Am. Compl. ("Mental Health Defs.' Br.") at 7 n.7, Doc. No. 76-1. Under Pennsylvania law, a certificate of merit must be filed "with the complaint or within sixty days after filing of the complaint." Pa.R.C.P. No. 1042.3(a)(1). The certificate of merit must be:

> signed by the attorney or party that either (1) an appropriate licensed professional has supplied a written statement that there exists a reasonable probability that the care, skill or knowledge exercised or exhibited in the treatment, practice or work that is the subject of the complaint, fell outside acceptable professional standards and that such conduct was a cause in bringing about the harm, or (2) the claim that the defendant deviated from an acceptable professional standard is based solely on allegations that other licensed professionals for whom this defendant is responsible deviated from an acceptable professional standard, or (3) expert testimony of an appropriate licensed professional is unnecessary for prosecution of the claim.

*Id.* A defendant cannot seek dismissal without first giving the plaintiff notice of his or her failure to file a certificate of merit. Pa.R.C.P. No. 1042.7(4). As a result, even if Woodell asserted medical malpractice claims, the court could not dismiss any such claims on this basis because the defendants did not inform the court that they provided him with notice of their intent to seek dismissal 30 days prior to seeking dismissal for the failure to file certificates of merit. *See Valentine v. Lynch*, Civ. A. No. 18-4733, 2019 WL 2367762, at *4 (E.D. Pa. June 4, 2019) ("Defendants must provide notice before seeking dismissal for failing to file a Certificate of Merit and thirty (30) days must have 'elapsed between the notice of deficiency and the defendant's attempt to terminate the action.'" (quoting *Schmigel v. Uchal*, 800 F.3d 113, 118 (3d Cir. 2015)). If Woodell intends to assert such claims, he must specifically allege said claims in the second amended complaint and file "[a] separate certificate of merit . . . as to each licensed professional against whom a claim is asserted." Pa.R.C.P. No. 1042.3(b)(1).

[28] As discussed below, the court finds that the two-year statute of limitation for section 1983 claims bars most of Woodell's claims, including the entirety of his conditions of confinement claims.

13

## 1.    Section 1983 Prerequisites

### a.    Bars to Suing State Employees and Entities Under Section 1983[29]

To state a claim against an individual or entity under section 1983, said party must be a "person" under section 1983 and/or not immune from suit. Here, Woodell alleges that he sues each individual defendant, several of whom are state employees, in their official and individual capacities. Am. Compl. at ¶ 5 ("Each Commonwealth Defendant is sued in their 'personal/individual capacityies' [sic] . . . ."). Woodell also sues several state entities, namely the four SCIs, the DOC, and the Bureau of Health Services.

To the extent that Woodell seeks to exert claims for money damages against the DOC, the Bureau of Health Care Services, and the four SCI institutions, said entities are not amenable to suit under section 1983 because they have Eleventh Amendment immunity and are not "persons" under section 1983. *See Will v. Mich. Dep't of State Police*, 491 U.S. 58, 66 (1989) ("Section 1983 provides a federal forum to remedy many deprivations of civil liberties, but it does not provide a federal forum for litigants who seek a remedy against a State for alleged deprivations of civil liberties." (citation omitted)); *see also Green v. Wexford Health Sources, Inc.*, Civ. A. No. 16-3630, 2016 WL 7239891, at *3 (E.D. Pa. Dec. 14, 2016) (holding Eleventh Amendment immunity barred section 1983 claims against DOC); *Sloan v. Chambers*, Civ. No. 3:CV–12–1954, 2016 WL 4245550, at *13 (M.D. Pa. Aug. 11, 2016) (holding Eleventh Amendment immunity "applies to a 'subordinate agency' like the Bureau of Health Services and dismissal is appropriate under this theory" (citation omitted)).[30]

---

[29] The Commonwealth Defendants did not seek dismissal on these grounds. As such, the court reviewed this issue pursuant to its screening function.
[30] The court recognizes that "Eleventh Amendment immunity is, however, subject to three primary exceptions: (1) congressional abrogation, (2) waiver by the state, and (3) suits against individual state officers for prospective injunctive and declaratory relief to end an ongoing violation of federal law." *Pa. Fed'n of Sportsmen's Clubs, Inc. v. Hess*, 297 F.3d 310, 323 (3d Cir. 2002) (citation omitted).

The DOC, the four SCIs, and the Bureau of Health Care Services are also not amenable to suit under section 1983 because they are not "persons" as defined in the statute. *See Sloan*, 2016 WL 4245550, at *14 ("It is well settled that a prison or correctional facility is an arm of the state and thus is not a 'person' subject to suit under § 1983. The Bureau of Health Care Services, is a department within the DOC, thus is also not considered a 'person' amenable to suit under § 1983." (internal citations omitted)). As such, Woodell cannot assert a *Monell* claim against the DOC, Bureau of Health Care Services, or any of the SCIs. Woodell also cannot sue employees of DOC, Bureau of Health Care Services, or any of the SCIs in their official capacities for monetary damages. *See A.W. v. Jersey City Public Sch.*, 341 F.3d 234, 238 (3d Cir. 2003) (explaining that Eleventh Amendment's "protection from suit extends to state agencies as well as state officials sued in their official capacities for monetary damages" (citation omitted)).[31] Accordingly, the court dismisses Woodell's *Monell* claims against the DOC, Bureau of Health Care Services, and the four SCIs with prejudice, and any official capacity claims against individual state employees without prejudice.[32]

---

As for the first exception to Eleventh Amendment immunity, Congress did not intend to abrogate Eleventh Amendment immunity by enacting 42 U.S.C. § 1983. *See Quern v. Jordan*, 440 U.S. 332, 344–45 (1979) (stating that "§ 1983 does not explicitly and by clear language indicate on its face an intent to sweep away the immunity of the States; nor does it have a history which focuses directly on the question of state liability and which shows that Congress considered and firmly decided to abrogate the Eleventh Amendment immunity of the States"). Concerning the second exception, the Commonwealth of Pennsylvania has enacted 42 Pa. C.S. § 8521(b), which expressly indicates that the Commonwealth has not waived its Eleventh Amendment immunity from suit in federal courts. *See* 42 Pa. C.S. § 8521(b) ("Nothing contained in this subchapter shall be construed to waive the immunity of the Commonwealth from suit in Federal courts guaranteed by the Eleventh Amendment to the Constitution of the United States."); *see also Lavia v. Pa., Dep't of Corr.*, 224 F.3d 190, 195 (3d Cir. 2000) (explaining that Pennsylvania has not waived Eleventh Amendment immunity). For the final exception, to the extent Woodell seeks injunctive relief from individual state employees sued in their official capacities, he may do so in his second amended complaint. *See Sloan*, 2016 WL 4245550, at *13 ("The Eleventh Amendment, however, does not bar claims for prospective injunctive relief brought against state officials in their official capacities.").

[31] To the extent the court refers to claims against these parties later in the opinion, the court refers to Woodell's claims asserted against said parties in their *individual* capacities only. *See Hafer v. Melo*, 502 U.S. 21, 31 (1991) ("We hold that state officials, sued in their individual capacities, are 'persons' within the meaning of § 1983.").

[32] Regarding the Eleventh Amendment, it serves as "a jurisdictional bar which deprives federal courts of subject-matter jurisdiction." *Blanciak v. Allegheny Ludlum Corp.*, 77 F.3d 690, 694 n.2 (3d Cir. 1996). A dismissal of a claim for lack of subject-matter jurisdiction is ordinarily a dismissal without prejudice. *See In re Orthopedic "Bone Screw" Prods. Liab. Litig.*, 132 F.3d 152, 155 (3d Cir. 1997) (citation omitted). As such, courts should dismiss claims based

b.     Section 1983 Statute of Limitations[33]

"In actions under 42 U.S.C. § 1983, federal courts apply the state's statute of limitations for personal injury[]" and "Pennsylvania's statute of limitations for personal injury is two years[.]" *Sameric Corp. of Del., Inc. v. City of Phila.*, 142 F.3d 582, 599 (3d Cir. 1998) (citations omitted). While the state's limitations period determines how long a party may wait until bringing suit, "[f]ederal law . . . governs when a § 1983 action accrues, under which the limitations period begins to run from the time when the plaintiff knows or has reason to know of the injury which is the basis of the section 1983 action." *Harry v. City of Phila.*, No. Civ.A. 03–661, 2004 WL 1387319, at *10 (E.D. Pa. June 18, 2004) (citations and quotation marks omitted); *see also Sameric Corp. of Del.*, 142 F.3d at 599 ("A section 1983 cause of action accrues when the plaintiff knew or should have known of the injury upon which its action is based." (citation omitted)). With respect to section 1983 claims brought by prisoners, "the [Prison Litigation Reform Act ('PLRA')] is a statutory prohibition that tolls Pennsylvania's statute of limitations while a prisoner exhausts [his or her] administrative remedies[.]" *Pearson*, 775 F.3d at 603.

In addition to the automatic tolling during PLRA exhaustion, in some circumstances, courts may toll the statute of limitations if a defendant's conduct constitutes a "continuing violation." *Cowell v. Palmer Twp.*, 263 F.3d 286, 292 (3d Cir. 2001). This "equitable exception" applies

on Eleventh Amendment immunity without prejudice. *See Hong Tang v. Univ. of Baltimore*, No. 19-1146, 2019 WL 3714837, at *1 (4th Cir. Aug. 7, 2019) ("[A] dismissal based upon Eleventh Amendment immunity would be without prejudice." (citations omitted)); *Colby v. Herrick*, 849 F.3d 1273, 1278 (10th Cir. 2017) (explaining that dismissal for Eleventh Amendment immunity must be without prejudice); *Ernst v. Rising*, 427 F.3d 351, 366–67 (6th Cir. 2005) (determining that district court erred in dismissing claims with prejudice when dismissal based on Eleventh Amendment immunity). Therefore, the court dismisses the claims for monetary damages against the state official defendants in their official capacities without prejudice.

 As for the claims against DOC, Bureau of Health Care Services, or any of the SCIs, insofar as the court dismisses these claims based on these defendants not being "persons" amenable to suit under section 1983, these dismissals are with prejudice.

[33] All moving defendants seek dismissal of Woodell's claims against them because the two-year statute of limitations bars the claims. CCS Mem. at ECF pp. 3–10; Commonwealth Defs.' Mem. at 6–8; Vonzemensky Mem. at 4–6; Mental Health Defs.' Br. at 4–6. The court may consider these arguments on a motion to dismiss if the bar is apparent on the face of the complaint. *Robinson v. Johnson*, 313 F.3d 128, 135 (3d Cir. 2002).

"when a defendant's conduct is part of a continuing practice[.]" *Id.* Under this exception, "an action is timely so long as the last act evidencing the continuing practice falls within the limitations period[.]" *Id.* (citations and quotation marks omitted).[34] The exception does not toll the statute of limitations based solely on "the occurrence of isolated or sporadic acts." *Id.* (citation and quotation marks omitted). Instead, "[t]he Court must consider carefully the distinction between 'continuing violations' and 'discrete acts.'" *Anders v. Bucks Cty.*, Civ. A. No. 13–5517, 2014 WL 1924114, at *4 (E.D. Pa. May 12, 2014) (quoting *O'Connor v. City of Newark*, 440 F.3d 125, 128 (3d Cir. 2006)). Thus, "[e]ach discriminatory act starts a new clock for filing charges alleging that act." *Hunt v. Pa. Dep't of Corr.*, 289 F. App'x 507, 509 (3d Cir. 2008) (per curiam) (citations and quotation marks omitted). For example, the "continuing violation" exception does not apply to a section 1983 deliberate indifference claim merely because the plaintiff continues to suffer pain from an initial failure to provide medical treatment. *See Hickox v. Cty. of Blair*, 591 F. App'x 107, 110, 111 (3d Cir. 2014) (per curiam) (holding continuing violation exception to limitations bar inapplicable because it "refers to continual unlawful acts [by the defendants], not continual ill effects from an original violation[]" (alteration in original) (citations and quotation marks omitted)).

Courts consider "at least three factors" when assessing whether the exception applies, namely:

> (1) subject matter—whether the violations constitute the same type of discrimination, tending to connect them in a continuing violation; (2) frequency—whether the acts are recurring or more in the nature of isolated incidents; and (3) degree of permanence—whether the act had a degree of permanence which should trigger the plaintiff's awareness of and duty to assert his/her rights and whether the consequences of the act would continue even in the absence of a continuing intent

---

[34] Here, none of Woodell's conditions of confinement claims occurred (in any part) during the limitations period. *See* Am. Compl. at ¶ 23 (describing confinement in RHU cell at SCI–Fayette). To the extent Woodell complains of confinement in an RHU cell at SCI–Graterford, *id.* at ¶ 21, the court does not consider this a "continuing violation" as he was housed at different facilities and placed in isolation pursuant to different individuals' orders.

to discriminate. The consideration of "degree of permanence" is the most important of the factors.

*Cowell*, 263 F.3d at 292 (citations omitted). To date, the Third Circuit has not applied this exception to an Eighth Amendment claim. *See Hunt*, 289 F. App'x at 509 ("[N]either this Court nor the Supreme Court has ever applied the continuing violation doctrine outside of the employment discrimination context." (citations omitted)).

In the present case, after considering the three factors above, the court finds the continuing violation exception inapplicable to the case at bar. Pursuant to the first factor, at a very high level, the subject matter of Woodell's claims appears largely the same (*i.e.*, medical professionals' failure to provide him with adequate medical treatment). However, at a granular level, the subject matter of each claim is distinct. *See Frierson v. St. Francis Med. Ctr.*, Civ. No. 07–3857 (RMB/KMW), 2011 WL 3423930, at *9 (D.N.J. Aug. 4, 2011) ("Further, Plaintiff has failed to establish any connection between the alleged conduct of Hoey, Rosman, and Green in 2003, and Ifill in 2007. Not only did their alleged acts occur four years apart, but they also took place in different prisons: South Woods, where Hoey, Rosman, and Green worked, and Northern State Prison, where Ifill worked." (citation omitted)), *aff'd*, 525 F. App'x 87 (3d Cir. 2013) (per curiam); *cf. Spencer v. Courtier*, 552 F. App'x 121, 123 (3d Cir. 2014) (per curiam) (finding "placement in the [Special Management Unit], the lack of psychiatric treatment, and the conditions of confinement" the same subject matter).[35] Here, Woodell alleges that different individuals, at separate institutions, denied him medical treatment for a variety of issues (*e.g.*, panic attacks, seizures) over several years. *See, e.g.*, Am. Compl. at ¶ 70 (asserting claims against "Defendant Nurses Jamie Link, Ann Lewis,

---

[35] Notably, in *Spencer*, it appears the plaintiff asserted claims all arising from confinement at one facility. *See Spencer v. Kelchner*, Civ. A. No. 3:CV-11-2268, 2012 WL 12862340, at *1 (M.D. Pa. Aug. 10, 2012) ("Plaintiff basically alleged that the conditions of his confinement in the Special Management Unit ('SMU') at SCI-Camp Hill from January 11, 2006 to June 8, 2007, violated his Eighth Amendment right to be free from cruel and unusual punishment as well as his Fourteenth Amendment right to due process.").

Rich, Bob Grossman, Voltz, Defranseco, John/Jane Doe(s)"). As such, the subject matter of Woodell's claims is distinct.

The second factor, frequency—while difficult to discern given Woodell's failure to plead a clear timeline—ultimately does not support tolling the statute of limitations because Woodell does not allege that the *same* individuals continuously violated his rights. Instead, he alleges a litany of complaints against numerous defendants related to his medical treatment at four different SCIs. *See Ozoroski v. Maue*, 460 F. App'x 94, 97 (3d Cir. 2012) (finding no continuing violation, in part, because "[plaintiff's] claims against [defendant] rest on an equally isolated event—her refusal to permit an application for pre-release to be filed on [plaintiff's] behalf.").

Lastly, the "degree of permanence" is high. Woodell alleges that he knew the treatment plan proposed by the Rockview and Fayette Defendants failed to appropriately treat him and that he filed grievances and/or knew about these issues years ago. *See, e.g.*, Am. Compl. at ¶ 60 (describing chronology of improper medical care from June 2012 through October 3, 2013 and stating that he filed grievance about said treatment); *Id.* at ¶ 20 (alleging he complained of "increasing and frequent panic attacks [and] seizures" from "March 25, 2005 to December 9, 2009"). As such, Woodell knew that he had claims against the Rockview and Fayette Defendants related to his medical treatment within the two-year limitations period. *See Spencer*, 552 F. App'x at 123 (looking to date of plaintiff's administrative grievances as proof plaintiff knew of potential claims). Therefore, the continuing violation exception does not apply to Woodell's claims.[36]

Given that the court declines to apply the "continuing violation" exception, the court now addresses the timeliness of Woodell's claims on a facility-by-facility basis. Regarding Woodell's

---

[36] The court disregarded any general allegation made against the "Commonwealth Defendants" because, except as otherwise noted, Woodell had no contact with certain individuals after his transfer to each SCI facility. Thus, the court considers any general allegations asserted against all the named parties implausible.

first two facilities, SCI–Rockview and SCI–Fayette, Woodell left their custody in 2009 and 2011, respectively. *See* Am. Compl. at ¶¶ 12 (alleging he remained at SCI–Rockview from 2005–2009 and SCI–Fayette from 2009–2011). Woodell does not allege that *any* individual responsible for providing him medical treatment, his conditions of confinement, or reviewing his grievances, at either of these two facilities encountered him after 2011. *See, e.g.*, *id.* at ¶ 24 (alleging parties associated with SCI–Rockview committed violations from 2005–2009); *id.* at ¶ 43 (alleging SCI–Rockview staff transferred him to SCI–Fayette "without providing Plaintiff with needed medical treatment"); *id.* at ¶ 44 (alleging inhumane conditions at SCI–Fayette from "December 9, 2009 until his transfer to SCIG on December 20, 2011[]"). The court also knows that Woodell became aware of his claims within the limitations period because, at the latest, in 2010 (as to SCI–Fayette) and 2011 (as to SCI–Rockview), he filed grievances regarding his medical treatment and prison conditions.[37] Consequently, even with PLRA tolling, Woodell's claims against the Rockview and

---

[37] Woodell allegedly filed three grievances related to his medical treatment and/or confinement at SCI–Fayette: "# 315717 (filed 5/6/10), # 318248, [and] # 332159[.]" Am. Compl. at ¶ 29; *see also id.* at ¶ 48 (same). Woodell alleges that Dr. Gallucci and Bozelli responded to his grievances on an unspecified date. *Id.* It also appears that Woodell appealed said grievances because he alleges Superintendent Tennis denied his appeal. *Id.; see also id.* at ¶ 49 (describing Coleman as responding to his "second level appeal to facility manager on grievance # 332159"). While Woodell does not specifically allege when these grievances became fully exhausted, the court determines that is implausible that he exhausted these grievances within the limitations period based on: (1) the duration of his confinement at SCI–Fayette (*i.e.*, no later than 2011) and (2) his allegation that said grievance is fully exhausted. *Id.* at ¶ 27. Consequently, the court finds that the two-year statute of limitations bars these claims.

Woodell alleges that he exhausted his administrative remedies with respect to his SCI–Rockview grievance on October 6, 2006 (# 151893). *Id.* at ¶ 28; *see id.* at ¶ 27 (alleging conditions of confinement at SCI–Rockview grievance exhausted in 2006). Specifically, he alleges that grievance # 151893 included his claims related to:

> [his] panic attacks, seizures, injuries from those seizures sustained by Plaintiff in the RHU/POC dirty, cold and isolated cells where he remained untreated, many of these incidents remained undocumented by Commonwealth Defendants and psychotropic and experimental medications were repeatedly prescribed without any physical examination, test and/or being seen by a neurologist. Paxil, Impramine, Klinopin [sic] were prescribed.

*Id.* at ¶ 28. Woodell further alleges that "[g]rievance #164094-06 was ruled as an extension of [g]rievance # 1518193." *Id.* (emphasis omitted). Thus, the court finds that, even with PLRA tolling, the two-year statute of limitations bars Woodell's claims related to grievance #151893.

Fayette Defendants became ripe well before March 11, 2016. Thus, the court dismisses with prejudice Woodell's claims against the Rockview Defendants and Fayette Defendants.

Woodell also alleges violations of his civil rights occurred at SCI–Graterford (now SCI–Phoenix) and that he fully exhausted his administrative remedies with respect to those claims. *Id.* at ¶¶ 30, 69. Woodell resided at SCI–Graterford from 2011 until July 2018 when DOC transferred him to SCI–Phoenix. *Id.* at ¶ 12.[38] The grievances arising from Woodell's incarceration at SCI–Graterford include: # 480049, # 484914, # 517371, # 559678, # 603733, # 631559, # 636041, and # 716882. *Id.* at ¶ 30.[39]

In the attached grievances, Woodell makes various allegations related to his healthcare, namely:

- Grievance # 480049: Woodell asserts that "Dr's. [sic] Platt, Lewis, Klemick, Baggio, Pamela, Balk, Gok, Mohata and Nurse's [sic] Louis, Dennis, Carl – including Nurse Supervisor Grossman[,] RN's [sic] Joyce, Verana, McDonald, Tobin, Genie DeFranseco, Gio, Gossi, Kor[szn]ack and RN's [sic] March, Christina, Priscilla[,] Chief Psychologist Martinez and

---

[38] Woodell appears to assert most of his claims against individuals employed at SCI–Graterford and attempts to incorporate by reference allegations in numerous grievances. *See, e.g.*, *id.* at ¶ 65 (incorporating by reference complaint sent to John Wetzel). Woodell failed to attach any documents to his amended complaint; however, the Commonwealth Defendants attached most of the grievances related to SCI–Graterford/Phoenix to their motion to dismiss. *See* Commonwealth Defs.' Mem., Ex. A (# 480049), Doc. No. 74-3; Commonwealth Defs.' Mem., Ex. B (# 559678), Doc. No. 74-4; Commonwealth Defs.' Mem., Ex. C (# 603733), Doc. No. 74-5; Commonwealth Defs.' Mem., Ex. D (# 631559), Doc. No. 74-6; Commonwealth Defs.' Mem., Ex. E (# 636041), Doc. No. 74-7; Commonwealth Defs.' Mem., Ex. F (# 716882), Doc. No. 74-8. To the extent the court could identify the referenced grievances in the record, it reviewed the grievances. To the extent the court could not locate a specific grievance, the court determines that Woodell failed to raise the claims in said grievance. *See, e.g.*, Am. Compl. at ¶ 69 (incorporating by reference grievance # 482582). However, if Woodell alleged exhaustion of a certain grievance, even if not provided, the court conducted the applicable statute of limitations analysis. The court also does not consider Woodell's attempt to incorporate the entirety of his first complaint as a proper means to assert allegations. *Id.* at ¶ 66.

[39] Neither Woodell nor any defendant provided copies of grievances # 482582, # 488603, or # 517371 to the court. The court reviewed previous filings in this matter to try to find the missing grievances. The court identified # 517371 in one of Woodell's previous filings. Supp. to Pl.'s Resp. to Defs.' Mot. to Dismiss or in Alternative Mot. for Summ. J., Ex. C at ECF pp. 4–5, Doc. No. 66-2. As to the missing grievances,# 482582 and # 488603, Woodell alleges he exhausted said grievances on August 15, 2014 and January 26, 2015, respectively. Am. Compl. at ¶¶ 30, 69. As such, based on the allegations in the amended complaint, these claims are time barred. Therefore, the court dismisses Woodell's claims asserted in grievances # 482582 and # 488603 with prejudice.

Psy., King, and Dr. Felipe Arias" gave him inadequate medical treatment during an incident on September 23, 2013. Commonwealth Defs.' Mem., Ex. A at ECF pp. 18–19, Doc. No. 74-3. DOC denied this grievance by no later than August 15, 2014. *Id.* at ECF p. 3. Woodell had until August 15, 2016, to file this claim. As such, it is time barred and the court dismisses claims relating to this grievance with prejudice.

- Grievance # 484914:[40] Woodell alleges that on October 27, 2013, he suffered because of unnamed SCI–Graterford medical personnel's "misconception[s]" of his condition. Supp. to Pl.'s Resp. to Defs.' Mot. to Dismiss or in Alt. Mot. for Summ. J. ("First Supp."), Ex. D at ECF p. 13, Doc. No. 66-2. He goes on to allege specific complaints about "Major Dohman" being rude to him when he asked for help with his treatment. *Id.* Next, he alleges that he suffered a seizure and awoke in a POC that lacked water, a working toilet, sheets, blankets. *Id.* at ECF p. 14. He further alleges that he was placed there in soiled clothing, that SCI–Graterford provided him "experimental medication[,]" and that they punished him for having seizures by placing him in the "Restricted Housing Unit/Hole" (also referred to as "RHU" cells)[41] and POC. *Id.* DOC issued a final denial of his grievance on July 21, 2014. *Id.* at ECF p. 19. Woodell filed another response and DOC remanded the grievance. *Id.* at ECF pp. 20–21. DOC again denied the grievance on May 21, 2015. *Id.* at ECF p. 22. It appears that Woodell appealed that decision, *id.* at ECF pp. 23–25, and Varner (acting as chief grievance officer) denied the appeal on August 18, 2015. *Id.* at ECF p. 26. Based on this final denial date, Woodell had until August 18, 2017, to file this claim. Consequently, the court finds the statute of limitations bars this claim and dismisses it with prejudice.

---

[40] Woodell alleges that he incorporates grievance # 484914 by reference. *See* Am. Compl. at ¶ 69 ("Plaintiff hereat [sic] incorporates Grievance, Appeals and Response #484914 (filed 11/6/13; Affidavit of Waldemar Rosario (BV0876) filed 10/27/13; Extension filed 12/5/13 [by Wendy Shaylor][.]").
[41] *See* Am. Compl. at ¶ 3 (defining RHU).

- Grievance # 517371: Woodell alleges that from May 31st to June 13th (presumably 2014 based on the date of the grievance), he suffered seizures and was not provided the appropriate medical care. First Supp., Ex. C at ECF pp. 4–5, Doc. No. 66-2. He again complains of the years-long "discrimination" from medical professionals, including WHC doctors and an unnamed "administrator" who believed he was "faking" it. *Id.* at ECF p. 4. In the affidavit attached to the grievance, another inmate (Waldemar Rosario) swears that he assisted Woodell in drafting the grievance related to an incident on June 26, 2014. *Id.* at ECF p. 6. On July 8, 2014, DOC denied his grievance because Woodell filed it late and the grievance related to a previously filed grievance (# 480049). *Id.* at ECF p. 3. Woodell had until July 8, 2017, to file claims related to this grievance. As such, the court dismisses these claims dismissed with prejudice as untimely.

- Grievance # 559678: Woodell alleges that he received improper treatment during February and March 2015 from the "Mental Health Department" and Dr. Martinez. Commonwealth Defs.' Mem., Ex. B at ECF pp. 5–6, Doc. No. 74-4. DOC denied this grievance on May 11, 2015. *Id.* at ECF p. 2. As Woodell had until May 11, 2017, to file this claim, the court dismisses this claim with prejudice as untimely.

- Grievance # 603733: Woodell complains of "unprofessional communication and care from the Medical Department Health Care Professioals [sic]" on July 28, 2015; November 30, 2015; December 1, 2015; and December 8, 2015. Commonwealth Defs.' Mem., Ex. C at ECF pp. 7–8, Doc. No. 74-5. Woodell also complains about difficulties in scheduling his colonoscopy with Dr. Wiener. *Id.* at ECF p. 7. In Woodell's response to the initial grievance denial he also complains about his treatment from Dr. Wiener and "Dr. Schar[i]ff." *Id.* at ECF p. 5. Woodell also appears to accuse Banta of "leaving [him] frustrated[.]" *Id.* DOC denied this claim on June 10,

2016. *Id.* at ECF p. 2. Woodell had until June 10, 2018, to file this claim. As such, the claim is timely.

- Grievance # 631559:[42] Woodell alleges that Dr. Wiener interfered with the Temple University neurologist's treatment plan. Commonwealth Defs.' Mem., Ex. D at ECF pp. 7–8, Doc. No. 74-6. Woodell primarily complains about several incidents during April and May 2016, wherein unnamed medical staff and Dr. Wiener generally failed to provide him adequate treatment for his seizure condition (*e.g.*, adequate pain management). *Id.*[43] Woodell also alleges that Dr. Wiener retaliated against him. *Id.* at ECF p. 7.[44] DOC issued a final denial of this grievance on December 6, 2016. *Id.* at ECF p. 2. As such, Woodell needed to file a claim related to this grievance by December 6, 2018. Because Woodell filed the instant action in March 2018, this claim is timely.

- Grievance # 636041: Woodell asserts generalized complaints about SCI–Graterford's failure to promptly diagnose him. Commonwealth Defs.' Mem., Ex. E at ECF pp. 3–4, Doc. No. 74-7. DOC issued a final denial of this grievance on July 25, 2016. *Id.* at ECF p. 2. DOC denied the grievance because it raised issues already presented in grievance # 631559. *Id.* While at first glance this grievance appears timely, Woodell alleges he exhausted the related grievance (# 631559) on December 6, 2016. Am. Compl. at ¶ 69. Therefore, to the extent Woodell raised any complaints in this grievance (# 636041) in # 631559, the court finds those claims untimely.[45] With respect to Woodell's allegations related to incidents in 2011 and 2015, including

---

[42] Woodell alleges the claims in this grievance via incorporation by reference. Am. Compl. at ¶ 69.

[43] Woodell also mentions Dr. Schariff; however, he does not appear to complain of Dr. Schariff's treatment.

[44] Woodell does not specify what Dr. Wiener retaliated against him for or why in the aforementioned grievance. Woodell also does not assert that he intended to bring any claims other than those arising under the Eighth and Fourteenth Amendments. *See* Am. Compl. at ¶ 80 ("Commonwealth Defendants' denial, refusal to treat and/or delay of needed medical treatment due to costs involved violations [of] the 8th and 14th Amendment guarantees."); *id.* at ¶ 81 (alleging isolation cells violated "8th and 14th Amendment guarantees[]").

[45] The court does not consider Woodell's mention of another seizure in 2016 or description of his surgery on March 28, 2016, as an attempt to state recent claims. Commonwealth Defs.' Mem., Ex. E at ECF pp. 3–4, Doc. No. 74-7. He makes an undated allegation of being "penalized" for having a neurological disorder. This conclusory allegation, asserted against no particular individual or entity, fails to state a claim for relief.

24

*inter alia*, his stay in the RHU cell, the court also finds said claims untimely. Accordingly, the court dismisses these claims with prejudice. Woodell may not reassert them in a second amended complaint.

- <u>Grievance # 716882</u>: Woodell presents complaints about Korszniak "allowing [his] prescription to either run out of stock or them [sic] to become discontinued each month in the last year" and references his prior grievances asserting the same. Commonwealth Defs.' Mem., Ex. F at ECF pp. 6–7, Doc. No. 74-8. DOC denied in part and granted in part this claim on August 14, 2018. *Id.* at ECF p. 2. Hence, this claim is timely.

As described above, the court dismisses Woodell's claims in the following grievances with prejudice because Woodell failed to bring the claims within the two-year statute of limitations: # 480049, # 484914, # 517371, # 559678, and # 636041.

Woodell also expressly brings claims against several SCI–Graterford employees and WHC and/or CCS employees operating at SCI–Graterford that the court will dismiss because the statute of limitations bars them.[46] As to the Commonwealth Defendants King, Link, Dr. Martinez, Korszniak,[47] Wenerowicz, and Grossman, Woodell failed to allege any facts giving rise to a claim within the limitations period.[48] As a result, the court dismisses with prejudice Woodell's claims against King, Link, Dr. Martinez, Korszniak, Wenerowicz, and Grossman. The court also

---

[46] For the sake of completeness, the court discusses these claims even if they are duplicative of those raised in the grievances above.

[47] As to Joseph Korszniak, Woodell merely alleges that he denied his grievance request on November 1st. *See id.* at ¶ 61 (alleging Korszniak denied his 10/3/2013 grievance on 11/1). Woodell does not attach the grievance records to his complaint as stated in the allegation; however, the Commonwealth Defendants attached said grievance to their motion to dismiss. Commonwealth Defs.' Mem., Ex. A at 17, Doc. No. 74-3. Korszniak denied Woodell's grievance, submitted during his incarceration at SCI–Graterford, as "frivolous" on October 3, 2013. *Id.* As such, the statute of limitations bars this claim.

[48] *See* Am. Compl. at ¶ 60 (alleging 2013 incidents related to King); *id.* at ¶¶ 17, 22, 30, 60 (alleging facts related to Link's 2013 behavior); *id.* at ¶¶ 10, 20, 60 (alleging facts related to Dr. Martinez's 2011 and 2013 behavior); *id.* at ¶¶ 30, 62 (alleging Wenerowicz behavior from 2014); *id.* at ¶ 70 (alleging Grossman denied him medical treatment on several dates in 2012 and 2013).

dismisses with prejudice claims against Dr. Blatt, Dr. Mohata, Dr. Lewis, Dr. Machak, Dr. Smith, Dr. Tobin, Ruminski, Dr. Pandya, and Klemick for the same deficiency.[49] Lastly, Woodell also asserts a claim against Williams with respect to an April 24, 2014 grievance denial. *Id.* at ¶ 63. Woodell needed to assert this claim by April 24, 2016. Therefore, the court dismisses Woodell's claim against Williams as untimely.

Woodell also asserts a generalized complaint regarding his two-day placement in the RHU cell at SCI–Graterford. *See, e.g.*, Am. Compl. at ¶ 57 (describing confinement in RHU cell as occurring from "December 20, 2011" until "December 21, 2011"). To the extent Woodell asserts an Eighth Amendment conditions of confinement claim against SCI–Graterford or its employees related to his December 2011 confinement, the court dismisses it with prejudice because the statute of limitations bars this claim.[50]

### c.    Personal Involvement[51]

To adequately plead a section 1983 claim, a plaintiff must allege that the named defendants had "personal involvement in the alleged wrongs," because section 1983 "liability cannot be predicated solely on the operation of *respondeat superior*." *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988). A plaintiff appropriately pleads personal involvement "through allegations of

---

[49] Am. Compl. at ¶ 60 (alleging Dr. Blatt violated his rights on March 14, 2013); *id.* at ¶¶ 21, 60 (alleging facts related to Dr. Mohata's 2013 treatment); *id.* at ¶¶ 9, 60 (alleging facts related to Dr. Lewis's 2012 and 2013 behavior); *id.* at ¶ 23 (alleging Dr. Machak violations in 2011); *id.* at ¶ 73 (alleging 2013 behavior by Dr. Smith); *id.* at ¶¶ 9, 60 (alleging Dr. Tobin violated his rights in 2012 and 2013); *id.* at ¶ 20 (asserting claim against Ruminski with respect to 2013 grievance); *id.* at ¶ 60 (alleging action related to February 9, 2013 treatment against Dr. Pandya); *id.* at ¶¶ 18, 58, 60, 73 (alleging 2013 and 2014 facts about Klemick).

[50] If Woodell intended to assert additional instances of alleged unconstitutional conditions of confinement at SCI–Graterford or SCI–Phoenix that are timely, he may do so in his second amended complaint. *See, e.g., id.* at ¶ 19 (alleging in undated allegation that unnamed individuals at SCI–Graterford "punish[ed] Plaintiff with months in a dirty, no water running, cold RHU/POC cell").

[51] Woodell failed to allege any facts regarding certain defendants' personal involvement in the alleged violations. Am. Compl. at ¶ 58. As such, his claims against Ranker, Bolger, Whitfield, and Kaminsky are dismissed without prejudice. *See Smart-El v. Ocean Cty. Justice Facility*, Civ. A. No. 07–6130(FLW), 2008 WL 205222, at *1 n.3 (D.N.J. Jan. 23, 2008) (dismissing claim when plaintiff only named defendant in caption but did not allege any specific acts committed by defendant in complaint).

personal direction or of actual knowledge and acquiescence. Allegations of participation or actual knowledge and acquiescence, however, must be made with appropriate particularity." *Id.*

In the present case, Woodell's timely claims largely suffer from two pleading flaws: (1) his failure to allege with specificity how each individual named in the amended complaint participated in the alleged wrongdoing and (2) his attempt to assign liability based on *respondeat superior*.[52]

First, Woodell makes numerous allegations against the "Commonwealth Defendants" in both his amended complaint and supplement; it appears Woodell defines this grouping as any individual involved with, employed by, or providing services at the relevant SCIs. *See, e.g.*, Am. Compl. at ¶ 31 ("The above medical grievances, appeals, rejections and request slips to Commonwealth Defendants where Plaintiff informed each individual named Commonwealth Defendant named-above of his increasing severe panic attacks and seizures . . . ."). Woodell cannot assert claims against individuals by referencing a "catchall" grouping of defendants— particularly when the grouping indiscriminately references more than 70 parties. Consequently, the court does not consider any allegation alleged against the "Commonwealth Defendants" (as defined in the amended complaint, not in this opinion) to satisfy the section 1983 pleading requirements. *See Iqbal*, 556 U.S. at 676 ("[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution.").

Similarly, Woodell alleges that Varner, the "Chief Grievance Review Officer," knew of his serious medical needs and could have remedied the situation by investigating his grievances, requiring his doctors to physically examine him, and obtain specialist treatment for him. Am. Compl. at ¶ 22. However, Woodell's claim against Varner fails because simply reviewing a

---

[52] The Commonwealth Defendants and Mental Health Defendants each moved for dismissal on both grounds. Commonwealth Defs.' Mem. at 8–10; Mental Health Defs.' Br. at 7.

grievance does not satisfy the "personal involvement" requirement for section 1983 claims. *See Altenbach v. Ianuzzi*, 646 F. App'x 147, 151 (3d Cir. 2016) (per curiam) ("To the extent that [the plaintiff's] claim is based on [the nurse supervisor's] alleged failure to satisfactorily resolve his grievances, the District Court was similarly correct in dismissing it." (citation omitted); *Rogers v. United States*, 696 F. Supp. 2d 472, 488 (W.D. Pa. 2010) ("If a grievance official's only involvement is investigating and/or ruling on an inmate's grievance after the incident giving rise to the grievance has already occurred, there is no personal involvement on the part of that official." (citing *Rode*, 845 F.2d at 1208)). Therefore, the court dismisses Woodell's claim against Varner because he failed to allege facts sufficient to establish her personal involvement.

Second, Woodell's claims against numerous defendants fail because he attempts to plead *respondeat superior* liability. Woodell cannot assert claims against Deputy Superintendents Galinski, Lane, Lamas, Ondrejka, Banta, Karpinski, Dohman, Baker, or Terra, merely on the basis that he was under their care and/or custody when "his panic attacks and seizures, and other physical injuries and visible open wounds became worse, more frequent, [and] required emergency brain surgery[.]" Am. Compl. at ¶ 58. He also cannot state a claim against these individuals merely because they knew of his medical condition. *See id.* at ¶ 37 (alleging he told "Tennis, Marsh, Lamas, Coffman, Ellers, Dr. Synmons, Dr. Burke and Does" about increasing severity of his seizures and panic attacks). Instead, Woodell must allege facts giving rise to supervisory liability against these defendants.[53]

"[A] supervisor may be personally liable under § 1983 if he or she participated in violating the plaintiff's rights, directed others to violate them, or, as the person in charge, had knowledge of and acquiesced in his subordinates' violations." *Id.* (citation omitted). Woodell's amended

---

[53] Woodell cannot assert "policymaker" liability against these individuals because, as state employees, any *Monell* claim against their employers is barred by the Eleventh Amendment.

complaint fails to state a claim for relief under this theory with respect to the aforementioned parties. As such, the court dismisses without prejudice his claims against Deputy Superintendents Galinski, Lane, Ondrejka, Banta, Karpinski, Dohman, Baker, Lamas, and Terra. To the extent Woodell has timely claims against these individuals, he may assert them in a second amended complaint.

Woodell also makes conclusory allegations against Dr. Banbridge, Dr. Biggie, Dr. Gek, Dr. Golsorkhi, Dr. Schariff, DeFrangesco, Dr. Balk, Dr. Vonzemensky, and Dr. Christian. Am. Compl. at ¶¶ 18, 19, 58, 59; *see also* Commonwealth Defs.' Mem., Ex. C at ECF p. 5 (asserting complaint about Dr. Scharff's treatment in grievance # 603733), Doc. No. 74-5. As to each of these medical defendants, he merely asserts conclusory, undated allegations related to their improper medical treatment, knowledge of his medical problems, and/or power to provide him better care and treatment. *Id.* at ¶ 18, 58. Again, these types of allegations cannot state a claim for relief under section 1983 because he must plead "participation or actual knowledge and acquiescence . . . with appropriate particularity." *Rode*, 845 F.2d at 1207. He also cannot seek to hold them liable simply based on their position of "power" or authority, *i.e.*, on a basis of *respondeat superior. Id.* He has further not included plausible allegations to establish supervisory or policymaker liability. Therefore, the court also dismisses these claims. If Woodell's claims against these individuals are not barred by the statute of limitations, then he may file a second amended complaint reasserting his claims against: Dr. Banbridge, Dr. Biggie, Dr. Gek, Dr. Golsorkhi, Dr. Schariff, DeFrangesco, Dr. Balk, Dr. Vonzemensky, and Dr. Christian.

### 2.    **Woodell's Remaining Section 1983 Claims**

As described above, most of Woodell's claims fail because of pleading deficiencies in the amended complaint. After the court's review, it appears that four of Woodell's federal claims

warrant a discussion of their validity on the merits, namely his: (1) grievance policy claim, (2) First Amendment access to the courts claim, (3) Eighth Amendment deliberate indifference to serious medical needs claim, and (4) *Monell* claims against CCS and WHC.

a.      Grievance Policy Changes[54]

Woodell appears to assert claims against Ferguson for changing the grievance policy in his supplemental filing. Second Supp. at ¶ 15. Specifically, Woodell alleges that:

> On August 15, 2018[,] Superintendent Tammy Ferguson []SCI- Phoenix[] suspended the grievance process [DC-ADM 804], suspended the time-lines [sic] for filing answers to grievances and grievance appeals, therefore, there is no guarantee on [sic] whether Commonwealth Defendants will investigate, file a response/answer to any medical grievance filed by Plaintiff, even though, the PLRA require [sic] Plaintiff to file a grievance, appeal to the facility manager/superintendent and final review/chief review office in central office prior to turning to the Court for intervention and resolution.

*Id.*[55] It appears that Woodell alleges that the policy change hinders his ability to sue under section 1983. *Id.* To the extent Woodell seeks to assert a claim based on Ferguson's alleged changes to the grievance policy, his claim fails as a matter of law because "an inmate has no constitutional right to a grievance procedure" and, as described above, simply denying a grievance fails to establish personal involvement. *Tapp v. Proto*, 404 F. App'x 563, 566 (3d Cir. 2010) (per curiam) (citation omitted); *see Altenbach*, 646 F. App'x at 151 ("To the extent that his claim is based on Holly's alleged failure to satisfactorily resolve his grievances, the District Court was similarly

---

[54] None of the moving defendants sought dismissal of these allegations. As such, the court reviews the claims pursuant to its screening power under 28 U.S.C. § 1915(e)(2)(B).

[55] To some extent it appears that this claim is not plausible given the currently available DOC policy requires a response within 15 work days from the date of filing and allows for only a ten-day extension of time. *See* DC-ADM 804, Inmate Grievance System Procedures Manual at 1-7 and 1-8, *available at* https://www.cor.pa.gov/About%20Us/Documents/DOC%20Policies/804%20Inmate%20GrievanGri.pdf (last visited Aug. 19, 2019). However, the court understands it is constrained by the allegations in the amended complaint, exhibits attached to the amended complaint and/or motion to dismiss (if incorporated or referenced in the amended complaint), and documents integral to the plaintiff's claims.

correct in dismissing it.").[56] Therefore, the court dismisses this claim because it fails to state a claim for relief.

<h3 align="center">b.    <u>Access to Courts</u>[57]</h3>

"Under the First and Fourteenth Amendments, prisoners retain a right of access to the courts." *Monroe v. Beard*, 536 F.3d 198, 205 (3d Cir. 2008) (citing *Lewis v. Casey*, 518 U.S. 343, 346 (1996)). This right, however, is not unlimited:

> prisoners may only proceed on access-to-courts claims in two types of cases, challenges (direct or collateral) to their sentences and conditions of confinement. Where prisoners assert that defendants' actions have inhibited their opportunity to present a past legal claim, they must show (1) that they suffered an "actual injury"—that they lost a chance to pursue a "nonfrivolous" or "arguable" underlying claim; and (2) that they have no other "remedy that may be awarded as recompense" for the lost claim other than in the present denial of access suit. To that end, prisoners must satisfy certain pleading requirements: The complaint must describe the underlying arguable claim well enough to show that it is "more than mere hope," and it must describe the "lost remedy."

*Id.* at 205–06 (citations and footnote omitted).

Here, Woodell alleges that prison medical staff provided him improper medical care "after his return from the Temple University Neurologist admittance for emergency brain surgery" and, as a result, he lost the ability to "challenge . . . his criminal conviction and sentence in State and Federal Court[.]" Am. Compl. at ¶ 19; *see also id.* at ¶ 3 (alleging claims barred by Post Conviction Relief Act ("PCRA") and Antiterrorism and Effective Death Penalty Act). He also alleges that the Bureau of Health Care Services "caused [his claims] to be time-barred in the challenge of his criminal conviction/sentence in State and Federal Courts during his period of sickness that

---

[56] This allegation also fails to state a claim because the court can excuse the PLRA exhaustion requirement if Woodell's administrative remedies are truly "unavailable." *See, e.g., Small v. Camden Cty.*, 728 F.3d 265, 271 (3d Cir. 2013) ("Remedies that are not reasonably communicated to inmates may be considered unavailable for exhaustion purposes." (citations omitted)); *Lee v. Warden C. Link*, Civ. A. No. 17–2528, 2019 WL 2504075, at *4 (E.D. Pa. June 13, 2019) ("Failing to timely respond to a grievance and ignoring an inmate's follow-up request for a decision renders a prison's administrative process unavailable." (citations omitted)).

[57] Again, the court reviewed this claim pursuant to its screening function.

remained untreated even though that sickness was known by Defendants, the need and request for treatment was known by Defendants." *Id.* at ¶ 20.

A review of the publicly available documents in Woodell's previous criminal and civil actions reveals that after a first-degree murder conviction, he received a life sentence on June 4, 2002. *Woodell v. Wenerowicz*, Civ. A. No. 3:14-cv-1764, 2017 WL 2734429, at *1 (M.D. Pa. June 26, 2017); Docket, *Commonwealth v. Woodell*, CP-40-CR-2635-2001 (Luzerne Ct. Com. Pl.), *available at* https://ujsportal.pacourts.us/DocketSheets/CPReport.ashx?docketNumber=CP-40-CR-0002635-2001&dnh=RLuoGEIkjpN92TaPItxc7Q%3d%3d (last accessed Aug. 14, 2019). Woodell filed a direct appeal, and his judgment of sentence became final on May 1, 2006. *Woodell*, 2017 WL 2734429, at *1. Woodell appears to have timely filed a PCRA petition on November 14, 2006. *Id.* The PCRA court denied relief, Woodell pursued a direct appeal, and the Supreme Court eventually denied a petition for allowance of appeal on July 18, 2012. *Id.*

Woodell filed a federal habeas petition in the United States District Court for the Middle District of Pennsylvania in May 2013, but he withdrew the petition. *Id.* Woodell then filed another petition in September 2014, which the Honorable John E. Jones III dismissed as untimely on June 26, 2017. *Id.* at *4. Woodell sought a certificate of appealability with the Third Circuit Court of Appeals, which the Third Circuit denied the request on October 3, 2017. *Woodell v. Superintendent Graterford SCI*, C.A. No. 17–2518, 2017 WL 6988714 (3d Cir. Oct. 3, 2017), *cert. denied sub nom. Woodell v. Link*, 138 S. Ct. 1993 (2018). Woodell clearly took advantage of the opportunity to file an appeal of his criminal conviction, a PCRA action, and a federal habeas petition. As such, the court struggles to see how any of the defendants impeded his access to the courts.[58]

---

[58] Woodell's access to the courts with respect to civil cases also does not appear hindered given the present action and his other pending section 1983 action against John Wetzel, Furgueson, DOC, several SCI–Phoenix employees, and Smart Communication. *Woodell v. Wetzel et al.*, No. Civ. A. 18-4430.

Accordingly, the court dismisses this claim without prejudice. If Woodell intended to assert such a claim, he must do so with greater specificity *and* while being mindful of the statute of limitations.[59]

c.    Deliberate Indifference[60]

"The Eighth Amendment, through its prohibition on cruel and unusual punishment, prohibits the imposition of 'unnecessary and wanton infliction of pain contrary to contemporary standards of decency.'" *Pearson v. Prison Health Serv.*, 850 F.3d 526, 534 (3d Cir. 2017) (quoting *Helling v. McKinney*, 509 U.S. 25, 32 (1993)). Said violations are actionable for monetary damages against state actors or individuals acting under color of state law *vis-à-vis* section 1983. 42 U.S.C. § 1983. To state a claim for deliberate indifference to serious medical needs, a plaintiff must allege facts, which if true, could "make (1) a subjective showing that the defendants were deliberately indifferent to [his or her] medical needs and (2) an objective showing that those needs were serious." *Pearson*, 850 F.3d at 534 (alteration in original) (citations and quotation marks omitted).

As to the first prong, a showing of deliberate indifference requires the plaintiff to establish "something more than mere negligence[.]" *Id.* The standard requires culpability, *i.e.*, "the official [must] both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists and to also draw the inference." *Id.* at 538 (citation and quotation marks omitted)). Examples include when:

> (1) prison authorities deny reasonable requests for medical treatment, (2) knowledge of the need for medical care is accompanied by the intentional refusal

---

[59] In this regard, the timing issues relating to Woodell's habeas petition seemingly could have only possibly occurred in 2013 or 2014, and the statute of limitations bars these claims.

[60] The CCS Defendants, Mental Health Defendants, and Vonzemensky seek dismissal of this claim on the merits. For the sake of brevity, the court does not summarize each moving defendants' argument as they generally seek dismissal for the same reasons (*e.g.*, negligence and difference of opinion as to treatment plans do not constitute deliberate indifference). *See, e.g.*, CCS Mem. at ECF pp. 13 (arguing prisoner dissatisfaction with treatment does not constitute an Eighth Amendment violation); Mental Health Defs.' Br. at 8 (arguing misdiagnosis does not constitute deliberate indifference); Vonzemensky Mem. at 6–7 (arguing disagreement with treatment does not constitute Eighth Amendment violation).

to provide it, (3) necessary medical treatment is delayed for non-medical reasons, and (4) prison authorities prevent an inmate from receiving recommended treatment for serious medical needs.

*Id.*

The standard also protects a non-medical professional when they reasonably rely on a treating medical professional's decisions. *See Spruill v. Gillis*, 372 F.3d 218, 236 (3d Cir. 2004) ("If a prisoner is under the care of medical experts . . ., a non-medical prison official will generally be justified in believing that the prisoner is in capable hands."). Thus, "absent a reason to believe (or actual knowledge) that prison doctors or their assistants are mistreating (or not treating) a prisoner, a non-medical prison official . . . will not be chargeable with the Eighth Amendment scienter requirement of deliberate indifference." *Id.*

As to the second prong, a medical need qualifies as

serious . . . if it is one that has been diagnosed by a physician as requiring treatment or one that is so obvious that a lay person would easily recognize the necessity for a doctor's attention. The seriousness of an inmate's medical need may also be determined by reference to the effect of denying the particular treatment.

*Monmouth Cty. Corr. Inst. Inmates v. Lanzaro*, 834 F.2d 326, 347 (3d Cir. 1987) (internal quotation marks and citations omitted). Courts also may consider a condition "serious" "where denial or delay causes an inmate to suffer a life-long handicap or permanent loss." *Id.* Conditions such as seizures generally qualify as a "serious medical condition." *See Conchewski v. Camden Cty.*, Civ. A. No. 11–2781(NLH), 2014 WL 1153779, at *9 (D.N.J. Mar. 21, 2014) ("Here, there is no debate that a seizure disorder constitutes a serious medical condition.").

In the present case, most of Woodell's claims relate the defendants' deliberate indifference to his seizures and panic attacks. *See, e.g.*, Am. Compl. at ¶ 60 (alleging numerous instances of

being "overdosed").[61] To the extent Woodell alleges that Varner and Ferguson,[62] non-medical professionals responsible for reviewing his grievances, were deliberately indifferent to his serious medical needs, his claim fails. As a matter of law, an officer's denial of a prisoner's grievance does not establish deliberate indifference when said prisoner is under the care and supervision of medical professionals. *See Gonzalez v. De Lasalle*, 703 F. App'x 62, 66 (3d Cir. 2017) (per curiam) (affirming grant of summary judgment in favor of wardens because "as non-medical professionals, [they] were entitled to rely on and defer to the medical judgment of" plaintiff's treating physician).[63] Woodell alleges some facts which indicate that Varner and Ferguson knowingly interfered in his ability to seek treatment by telling medical professionals to ignore him. *See, e.g.*, Am. Compl. at ¶ 22 (alleging grouping of defendants, including Varner, failed to remedy his complaints and informed people he was "faking" it). While these allegations *might* be sufficient to state a claim, Woodell fails to allege specific dates or instances in support of his claims. Therefore, the court dismisses his deliberate indifference against Varner and Ferguson, regarding his allegations that they interfered with his access to medical treatment, because it does not appear that amendment would be futile.

Woodell also asserts that Dr. Wiener failed to provide him proper medical treatment on May 26, 2016 and in 2018. *See, e.g.*, Second Supp. at ECF pp. 2–3 (alleging incident wherein Dr. Wiener failed to prescribe medication and/or ensure his medication was available at SCI–Phoenix);

---

[61] Most of Woodell's claims related to deliberate indifference are time-barred; the court does not discuss the merits of any obviously stale claims. Further, the court presumes for purposes of this discussion that Woodell's seizure condition is sufficiently "serious" to satisfy the *Estelle v. Gamble*, 429 U.S. 97 (1976) standard.

[62] The record includes grievances reviewed by Varner and Ferguson within the statute of limitations period. *See, e.g.*, Commonwealth Defs.' Mem., Ex. F at ECF p. 2, Doc. No. 74-8. Woodell alleges that Ferguson improperly denied his grievances in the supplement. Second Supp. at ¶ 15.

[63] To the extent Woodell alleges Varner and Ferguson are "personally involved" in the alleged constitutional violation merely because they reviewed and denied his grievances related to medical treatment, again, simply reviewing a grievance cannot satisfy the "personal involvement" requirement for section 1983 claims. *Altenbach*, 646 F. App'x at 151.

Commonwealth Defs.' Mem., Ex. D at ECF pp. 7–8, Doc. No. 74-6 (alleging incident related to Dr. Weiner's treatment in grievance # 631559). Similar to the 2016 complaints about Dr. Wiener's prescribing decisions, Woodell also alleges Dr. Wiener prescribed him Librium in 2018—an improper substitute for his medication. Second Supp. at ECF pp. 2–3. However, even if Dr. Wiener erred in making said medical decisions, Woodell does not allege facts sufficient to state a claim for deliberate indifference, *i.e.*, "acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). At bottom, Woodell alleges mere disagreement with Dr. Wiener's treatment decisions or malpractice. *See Bailey v. Palakovich*, No. 4:CV-06-1640, 2007 WL 1450698, at *6 (M.D. Pa. May 14, 2007) (citations omitted) (finding disagreement with medical attention and accommodations insufficient to establish Eighth Amendment claim). However, given the present disagreement between Woodell and Dr. Wiener regarding Woodell's proper treatment at SCI–Phoenix, Supp. at ECF pp. 2–4, the court cannot conclusively determine that leave to amend would be futile. Consequently, Woodell may file a second amended complaint asserting a claim for deliberate indifference against Dr. Wiener.

As described above, Woodell has two additional timely grievance claims (# 603733 and # 716882). As to grievance # 603733, Woodell merely asserts generalized complaints regarding communication with treating physician (Dr. Wiener) and facility personnel (Korszniak). Commonwealth Defs.' Mem., Ex. C at ECF pp. 7–8, Doc. No. 74-5. As with above, disagreeing with prison scheduling and a defendant's communication style does not constitute a section 1983 violation. However, because # 603733 is timely, and Woodell may be able to allege additional facts with respect to this encounter that could state a claim for relief, the court dismisses the claim without prejudice.

With respect to # 716882, Woodell merely alleges that Korszniak failed to address the issue of nursing staff allowing his prescriptions to run out of stock at the pharmacy. Commonwealth Defs.' Mem., Ex. F at ECF p. 6, Doc. No. 74-8. Woodell does not allege in the grievance that the missed doses caused him harm, and delays in obtaining medication is "at most, evidence of negligence, which does not constitute deliberate indifference[.]" *Puksar v. Hoffman*, No. Civ.A. 98-5832, 2000 WL 14469, at *3 (E.D. Pa. Jan. 7, 2000). Further, Woodell fails to plead any facts indicating that Korszniak intentionally allowed his prescriptions to run out or that it was Korszniak's responsibility to ensure he had his medications. *See Byrd v. Shannon*, 715 F.3d 117, 127–28 (3d Cir. 2013) (finding no deliberate indifference when prison delayed giving plaintiff medication, in part, because plaintiff bore responsibility for ordering renewals). Thus, the court dismisses this claim without prejudice and will allow Woodell to allege additional facts regarding his denial of appropriate medication in a second amended complaint.

### d.   *Monell* Liability[64]

Woodell appears to assert *Monell* claims against CCS and WHC in the amended complaint. Woodell alleges that both WHC and CCS are entities which provide "contracted" for medical services at DOC facilities. Am. Compl. at ¶¶ 18, 19. Given the court's requirement to liberally construe Woodell's amended complaint, the court infers that he intended to assert a *Monell* claim against each entity.[65]

---

[64] Any official capacity claims asserted against CCS or WHC personnel are claims against CCS or WHC. *See Kentucky v. Graham*, 473 U.S. 159, 166 (1985) ("As long as the government entity receives notice and an opportunity to respond, an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity. It is *not* a suit against the official personally, for the real party in interest is the entity." (citation omitted)). Thus, the court dismisses any official capacity claims against WHC and CCS employees because they are duplicative of claims against CCS and WHC. *Id.*

[65] CCS and WHC cannot be sued under section 1983 unless they "acted under color of state law" while performing services at the aforementioned SCIs. *See Groman v. Twp. of Manalapan*, 47 F.3d 628, 638 (3d Cir. 1995) ("As we have noted, a suit under § 1983 requires the wrongdoers to have violated federal rights of the plaintiff, and that they did so while acting under color of state law." (citing 42 U.S.C. § 1983)). CCS does not appear to dispute that it qualifies a "state actor" under section 1983, CCS Mem. at 10–16, WHC did not file a motion to dismiss in this matter.

Neither WHC nor CCS can be held liable under section 1983 for the actions of their employees under a theory of *respondeat superior*. *Santiago*, 629 F.3d at 128. Instead, a prima facie *Monell* claim at this early stage requires Woodell to "plausibly allege that [CCS's and/or WHC's] own formal policy or informal custom permitted the constitutional violation he alleges." *Thomas v. City of Phila.*, No. 17-1742, 2019 WL 2564438, at *2 (3d Cir. June 21, 2019) (per curiam). However,

> [n]ot all state action rises to the level of a custom or policy. A policy is made "when a decisionmaker possess[ing] final authority to establish municipal policy with respect to the action issues a final proclamation, policy or edict." *Kneipp v. Tedder*, 95 F.3d 1199, 1212 (3d Cir. 1996) (quoting *Pembaur v. City of Cincinnati*, 475 U.S. 469, 481, 106 S.Ct. 1292, 89 L.Ed.2d 452 (1986) (plurality opinion)). A custom is an act "that has not been formally approved by an appropriate decisionmaker," but that is "so widespread as to have the force of law." [*Bd. of Cty. Com'rs of*] *Bryan County* [*v. Brown*], 520 U.S. [397,] 404 [(1997).]
>
> There are three situations where acts of a government employee may be deemed to be the result of a policy or custom of the governmental entity for whom the employee works, thereby rendering the entity liable under § 1983. The first is where "the appropriate officer or entity promulgates a generally applicable statement of policy and the subsequent act complained of is simply an implementation of that policy." *Bryan County*, 520 U.S. at 417, 117 S.Ct. 1382 (Souter, J., dissenting). The second occurs where "no rule has been announced as policy but federal law has been violated by an act of the policymaker itself." *Id.* Finally, a policy or custom may also exist where "the policymaker has failed to act affirmatively at all, [though] the need to take some action to control the agents of the government 'is so obvious, and the inadequacy of existing practice so likely to result in the violation of constitutional rights, that the policymaker can reasonably be said to have been deliberately indifferent to the need.'" *Id.* at 417–18, 117 S.Ct. 1382 (quoting *City of Canton, Ohio v. Harris*, 489 U.S. 378, 390, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989)); *see also Berg* [*v. Cty. of Allegheny*], 219 F.3d [261,] 276 [(3d Cir. 2000)] (holding that plaintiff must "demonstrat[e] that the municipal action was taken with 'deliberate indifference' to its known or obvious consequences").

*Natale v. Camden Cty. Corr. Facility*, 318 F.3d 575, 584 (3d Cir. 2003) (second alteration in original) (footnote omitted).

Municipalities, and private entities acting under color of state law, can also be held liable under *Monell* based on their "failure to train" their employees. *City of Canton*, 489 U.S. at 392

("Consequently, while claims such as respondent's—alleging that the city's failure to provide training to municipal employees resulted in the constitutional deprivation she suffered—are cognizable under § 1983, they can only yield liability against a municipality where that city's failure to train reflects deliberate indifference to the constitutional rights of its inhabitants."). To plead a "failure to train" claim,

> a plaintiff must show "that in light of the duties assigned to [the relevant employees,] the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the [municipality] can reasonably be said to have been deliberately indifferent to the need." *City of Canton v. Harris*, 489 U.S. 378, 390, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989). This requires a showing of the policymakers' "continued adherence to an approach that they know or should know has failed to prevent tortious conduct by employees." *Bryan Cty.*, 520 U.S. at 407, 117 S.Ct. 1382. Additionally, "for liability to attach in this circumstance the identified deficiency in a [municipal]ity's training program must be closely related to the ultimate injury." *Canton*, 489 U.S. at 391, 109 S.Ct. 1197.

*Robinson v. Fair Acres Geriatric Ctr.*, 722 F. App'x 194, 199 (3d Cir. 2018) (alterations in original).

Here, Woodell's claims against CCS and WHC fail as a matter of law because, as described above, he cannot allege an underlying constitutional tort—a predicate for *Monell* liability against either entity. *See Green*, 2016 WL 7239891, at *5 ("The Court must first determine if plaintiff has stated a plausible violation of his Eighth Amendment rights by employees of Wexford and Correct Care."). Further, while Woodell includes numerous allegations in the amended complaint regarding his inadequate medical care, it appears Woodell seeks to hold both CCS and WHC liable under a theory of *respondeat superior*. As with the individual defendants above, Woodell cannot assert a claim under section 1983 based on *respondeat superior* against CCS or WHC. *See, e.g.*, Am. Compl. at ¶ 19 (alleging CCS provided medical services and employed certain individual defendants who denied him medical treatment); *id.* at ¶ 58 (alleging WHC provided him medical

treatment). Instead, he must allege that CCS and WHC, respectively, either have a policy or custom that resulted in the constitutional violations alleged. *See Altenbach*, 646 F. App'x at 151 ("To the extent that Altenbach's claim is based on Holly's failure to direct or supervise subordinate medical staff, the District Court correctly dismissed it as an improper theory of liability.").

If Woodell attempted to assert a "failure to train" theory in his amended complaint, Am. Compl. at ¶ 7, he does not allege with specificity that either CCS or WHC failed to adequately train its employees and that said failure resulted in the constitutional violation he asserts. *Cf. Robinson*, 722 F. App'x at 199–200 ("Although [plaintiff] alleged only generally that training was inadequate, the inadequacy of training can plausibly be inferred from [plaintiff's] allegations regarding the number and character of deficiency citations issued to Fair Acres by federal and state regulators."). Instead, he primarily complains that the none of the SCIs can adequately treat his condition based on the lack of on-site neurologists. Am. Compl. at ¶ 7. To the extent Woodell intended to assert such a claim, presuming that the claims are timely, he may do so with greater specificity in his second amended complaint. Therefore, the court dismisses Woodell's *Monell* claims against CCS and WHC without prejudice.

### 3. Woodell's Miscellaneous Requests: Permission to Supplement His Amended Complaint, Judicial Notice, Discovery, and Injunctive Relief

Woodell makes several requests to the court in the motions he filed after the motions to dismiss. The court first addresses his request to supplement his amended complaint and for judicial notice, and then turns to his requests for injunctive relief (*i.e.*, a TRO and/or preliminary injunction). Lastly, the court disposes of his request for a medical examination and/or discovery.

#### a. Request to Supplement and Judicial Notice

Woodell requests that the court consider additional facts not included in his amended complaint by either allowing him to file a supplement or taking judicial notice of certain facts

related to his medical condition. Second Supp. at ECF pp. 1, 8. The court grants Woodell's request

to the extent he wishes that the court review his supplemental filing as part of his amended

complaint. However, the court must deny his request that the court take "judicial notice" of any

allegations included in the supplemental filing.

Under Federal Rule of Evidence 201(b),

> a district court [may] take judicial notice of [adjudicative] facts that are "not subject
> to reasonable dispute in that [they are] either (1) generally known within the
> territorial jurisdiction of the trial court or (2) capable of accurate and ready
> determination by resort to sources whose accuracy cannot reasonably be
> questioned."

*In re NAHC, Inc. Sec. Litig.*, 306 F.3d 1314, 1331 (3d Cir. 2002) (quoting Fed. R. Evid. 201(b)).

Here, Woodell cannot satisfy either prong of Rule 201(b). At the outset, Woodell cannot satisfy

this standard because facts related to his medical condition are in reasonable dispute. As evidenced

by the above discussion, the parties dispute the current state of Woodell's medical condition and

quality of treatment. Further, the facts Woodell asks the court to take notice of are not "capable of

accurate and ready determination by resort to sources whose accuracy cannot reasonably be

questioned." Fed. R. Evid. 201(b). Therefore, the court denies Woodell's request for judicial

notice.

b.      Injunctive Relief

Woodell also requests that the court grant him either a preliminary injunction or a TRO.

Mot. for an Emergency TRO, Prelim. Inj., Emergency Screening, and Examinations ("Inj. Mot.")

at ECF p. 1; Second Supp. at ECF pp. 7–9. To obtain a preliminary injunction,

> the moving party must establish: "(1) a likelihood of success on the merits; (2) that
> [he] will suffer irreparable harm if the injunction is denied; (3) that granting
> preliminary relief will not result in even greater harm to the nonmoving party; and
> (4) that the public interest favors such relief." *Kos Pharm., Inc. v. Andrx Corp.*, 369
> F.3d 700, 708 (3d Cir. 2004). The irreparable harm alleged must be actual and
> imminent, not merely speculative. "[A] showing of irreparable harm is insufficient

if the harm will occur only in the indefinite future. Rather, the moving party must make a clear showing of *immediate* irreparable harm." *Campbell Soup Co. v. ConAgra, Inc.*, 977 F.2d 86, 91 (3d Cir. 1992) (internal quotations omitted).

*Moneyham v. Ebbert*, 723 F. App'x 89, 91–92 (3d Cir. 2018) (per curiam) (alterations in original).

"The standards for a temporary restraining order are the same as those for a preliminary injunction." *Bieros v. Nicola*, 857 F. Supp. 445, 446 (E.D. Pa. 1994) (citation omitted). To obtain either a TRO or a preliminary injunction, Woodell must demonstrate a likelihood of success on the merits. Given that the court dismisses all of Woodell's claims in the amended complaint, he necessarily cannot make the requisite showing.[66] Accordingly, the court denies his requests for injunctive relief.[67]

c.     Discovery

Woodell also requests that the court order that he be medically examined; he references purported Rule 35 of the Pennsylvania Rules of Civil Procedure in support of his claim.[68] *See* Mot. for an Emergency TRO, Prelim. Inj., Emergency Screening, and Examinations ("Inj. Mot.") at ECF p. 1 ("Exhibit A provides that statement, pursuant to Pa. Rules of Civil Procedures [sic] Rule 35 Physical and Mental Examinations (b) Examiner's Report (2) Contents (a) Order for Examination."), Doc. No. 86. The court stayed discovery in this matter on December 6, 2018. Doc. No. 80. As such, the court denies Woodell's request for discovery.

---

[66] To the extent Woodell requests the court order certain medical treatment or examinations, the court declines to do so at this time. As described above, Woodell cannot satisfy the standard for a preliminary injunction and is not entitled to this relief at the present time. *See Moneyham*, 723 F. App'x at 92 (affirming district court denial of request to order prison to provide dental treatment when plaintiff could not establish likelihood of success on merits on deliberate indifference claim).

[67] The court declines to hold a hearing on Woodell's motions for a preliminary injunction and/or TRO. As such, his request for an "emergency hearing" is denied. Inj. Mot. at ECF p. 2.

[68] The court presumes Woodell intends to reference Federal Rule of Civil Procedure 35 because there is no Pennsylvania Rule of Civil Procedure 35 regarding medical examinations. *See* Second Supp. at ECF p. 9 (referencing Federal Rule of Civil Procedure 35).

### III. CONCLUSION

As described above, all of Woodell's claims fail to state a claim for relief either because (1) state actors, in their official capacities, and state entities are not amenable to suit under section 1983; (2) the statute of limitations bars most of Woodell's claims; and (3) Woodell failed to allege personal involvement as to individual defendants or, when he did so, he failed to plead facts that stated a plausible claim for relief.[69] While the court does not dismiss any of Woodell's timely claims with prejudice—aside from those barred by Eleventh Amendment—if Woodell files a second amended complaint, he *must* comply with the court's direction to (1) assert only timely claims and (2) allege each defendant's personal involvement. If Woodell fails to comply with these requirements, the court may dismiss his second amended complaint with prejudice.

A separate order follows.

BY THE COURT:


_/s/ Edward G. Smith___
EDWARD G. SMITH, J.

---

[69] As stated above, Woodell's claims, related to pre-March 2016 incidents, are dismissed with prejudice: Manchas; Trempus; Clark; Zaken; DiCio; Nole; Coleman; Walker; Myers; Hawkinberry; Dr. Bolk; Dr. Savareedra; Amel; Randolph; Bozelli; M. Bzelte; Howard-Biggs; Moore; House; Marsh; Moore-Smeal; Gates; Berrier; "Deputy" Coffman; Dr. Burke; Dr. Synmons; Tennis; Lamas; Ellers; King, Link, Dr. Martinez, Dr. Mohata, Korszniak (with respect to Woodell's October 3, 2013 grievance), Wenerowicz, Grossman; Dr. Blatt, Dr. Lewis, Dr. Machak, Dr. Smith, Dr. Tobin, Ruminski, Dr. Pandya;and Dr. Klemick. The court also dismisses with prejudice Woodell's claims against SCI–Fayette, SCI–Rockview, SCI–Graterford, SCI–Phoenix, the DOC, and the Bureau of Health Services because said entities are not amenable to suit under section 1983. The court also dismisses without prejudice any official capacity claims against individual state employees for monetary damages.