IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| RANCOURT WOODELL, | : | |
| | : | |
| Plaintiff, | : | CIVIL ACTION NO. 18-1098 |
| | : | |
| v. | : | |
| | : | |
| DR. STEPHEN WEINER, M.D.O.; | : | |
| STEPHEN KAMINSKY, PHYSICIAN | : | |
| ASSISTANT; DR. SCHARFF, M.D.; | : | |
| JEANNE DEFRANGESCO, LICENSED | : | |
| NURSE PRACTITIONER; JOE | : | |
| KORZNIAK, CORRECTS HEALTH | : | |
| CARE ADMINISTRATOR; BOB | : | |
| GROSSMAN, REGISTER NURSE | : | |
| SUPERVISOR; TOMASZ BORZECKI, | : | |
| L.P.N.; SAM JACOBS [FORMERLY SAM | : | |
| DOE], L.P.N.; JAIME LINK, R.N.; | : | |
| SUPERINTENDENT CYNTHIA LINK; | : | |
| DEPUTY SUPERINTENDENT LAURA | : | |
| BANTA; DEPUTY SUPERINTENDENT | : | |
| GEORGE ONDREJKA; JOSEPH TERRA; | : | |
| SUPERINTENDENT TAMMY | : | |
| FERGUSON; DEPUTY | : | |
| SUPERINTENDENT MANDY SIPPLE; | : | |
| PA D.O.C. CHIEF GRIEVANCE | : | |
| COORDINATOR DORINA VARNER; | : | |
| PA D.O.C. BUREAU OF HEALTH CARE | : | |
| SERVICES JOHN SILVA [FORMERLY | : | |
| JOHN SILIVIA], sued in their individual | : | |
| and official capacities, | : | |
| | : | |
| Defendants. | : | |

**<u>MEMORANDUM OPINION</u>**

Smith, J.                                                          September 4, 2020

The *pro* se plaintiff, a life prisoner currently incarcerated in a state correctional institution,

in another attempt to plead a claim for relief, brings this fifth amended complaint under 42 U.S.C.

§ 1983 against 17 defendants. In the fifth amended complaint, the plaintiff alleges that these

defendants, who are either medical services professionals or state correctional employees, violated his civil rights because they acted with deliberate indifference to his serious medical needs, supervised and acquiesced to the alleged deliberate indifference, violated the prison's grievance policy, interfered with his ability to challenge his criminal conviction, and should be subject to sanctions. After a thorough review of the 39-page fifth amended complaint, the court finds that the plaintiff fails to state any plausible claim for relief. Further, at this point, after providing the plaintiff with five opportunities to state a plausible claim for relief, the court will dismiss this fifth amended complaint without leave to amend because any further amendment would be futile.

## I.    PROCEDURAL HISTORY

The court, by reference, incorporates the procedural history as explained at length in the memorandum opinion entered on August 30, 2019. *See* Aug. 30, 2019 Mem. Op. ("Mem. Op.") at 2–9, Doc. No. 88. In the order accompanying that memorandum opinion, the court, *inter alia*, (1) dismissed the *pro se* plaintiff, Rancourt Woodell's ("Woodell"), claims in his amended complaint with prejudice with respect to certain named defendants who were not "persons" subject to suit under 42 U.S.C. § 1983; (2) dismissed with prejudice claims that were barred by the statute of limitations; (3) dismissed without prejudice the remainder of Woodell's claims, allowing him leave to amend his complaint; (4) denied Woodell's motion to seek judicial notice and his "motion for an emergency temporary restraining order, preliminary injunction, emergency screnning [sic] and examinations;" and (5) set forth various guidelines that Woodell's second amended complaint must follow. *See* Aug. 30, 2019 Order at 2, Doc. No. 89. *Id*. at 5.

Rather than filing a second amended complaint in accordance with the court's order, on September 30, 2019, Woodell filed a notice of appeal to the Third Circuit from the memorandum

opinion and order filed on August 30, 2019.[1] *See* Doc. No. 92. Here, Woodell claimed he was requesting a stay to preserve the right to appeal the issues that the court dismissed in the August 30, 2019 order. *Id*. at 1. Then two days later, on October 2, 2019, the clerk of court docketed a second amended complaint with jury trial demand. Doc. No. 90.

The following day, the court entered an order dismissing the second amended complaint without prejudice. Oct. 3, 2019 Order at 1–2, Doc. No. 91. In dismissing the second amended complaint, the court noted Woodell failed to follow the court's direction that he name all defendants in the caption of any second amended complaint. *Id*. After reminding Woodell that he must follow all guidelines specified in the court's August 30, 2019 order, the court once again granted Woodell leave to amend and file a third amended complaint. *Id*. at 2. On October 4, 2019, in response to Woodell's notice of appeal, the court stayed Woodell's time to file a third amended complaint until the Third Circuit resolved the appeal. Oct. 4, 2019 Order at 1, Doc. No. 93.

Prior to resolution of the appeal, Woodell filed his third amended complaint on October 28, 2019. Doc. No. 95. Shortly thereafter, on November 4, 2019, the Third Circuit dismissed Woodell's appeal pursuant to Rule 42(b) of the Federal Rules of Appellate Procedure. Doc. No. 96. In response to the third amended complaint, on November 12, 2019, the defendant, Elisabeth Vonzemensky, M.D. ("Vonzemensky"), filed a motion to dismiss for the failure to state a claim. Doc. No. 97.

On January 28, 2020, the court lifted the stay of the time for Woodell to file a third amended complaint and ordered that his third amended complaint was deemed filed. Jan. 28, 2020 Order at 2, Doc. No. 98. In this order, the court also dismissed Woodell's Eighth Amendment and other section 1983 claims against various defendants without prejudice. *Id*. at 2. The court granted

---

[1] Woodell filed this notice of appeal directly with the Third Circuit. *See* Doc. No. 92. Also, the clerk of court did not enter the notice of appeal on the docket until October 4, 2019.

Woodell leave to file a fourth amended complaint on the conditions that this complaint must (1) "identify all defendants in the caption of the document in addition to identifying them in the body of the amended complaint" and (2) "state the basis for [hi]s claims against each named defendant." *Id*. The court also denied Vonzemensky's motion to dismiss as moot. *Id*. at 3. The next day, the court issued another order, this time directing SCI-Phoenix Superintendent Tammy Ferguson ("Ferguson") to have Woodell available for a phone conference on March 4, 2020. Jan. 29, 2020 Order at 1–2, Doc. No. 99.

On February 20, 2020, Woodell filed a fourth amended complaint. Doc. No. 100. In response to the fourth amended complaint, the defendants, Stephen Kaminsky, PA-C ("Kaminsky"), Jeanne DeFrangesco, CRNP ("DeFrangesco"), and Dr. Stephen Wiener ("Dr. Wiener") filed a motion to dismiss, or in the alternative, a motion for summary judgment, along with an accompanying memorandum of law on March 4, 2020. Doc. Nos. 101, 102.

However, after the scheduled telephone conference between the court, Woodell, and counsel for the defendants, the court dismissed Woodell's fourth amended complaint without prejudice. Mar. 5, 2020 Order at 2–5, Doc. No. 104. Woodell was, yet again, given leave to amend and file a fifth complaint with certain conditions. *Id.* The court also denied as moot Kaminsky, DeFrangesco, and Dr. Wiener's motion to dismiss. *Id*. at 3.

On July 2, 2020, the clerk of court docketed Woodell's fifth amended complaint.[2] Doc. No. 105. The court now reviews this document pursuant to its screening powers under 28 U.S.C. § 1915(e)(2)(B).

---

[2] Woodell was supposed to file the fifth amended complaint no later than April 6, 2020. *See* Mar. 5, 2020 Order at 3. Nonetheless, in the interests of justice, the court considers Woodell's fifth amended complaint to be timely filed, given the circumstances brought about by the COVID-19 pandemic.

4

## II.    DISCUSSION

### A.    Standard of Review of Complaints Under 28 U.S.C. § 1915(e)(2)(B)

Because the court has granted Woodell leave to proceed *in forma pauperis*, the court reviews the fifth amended complaint to determine whether it is frivolous, malicious, fails to state a claim upon which relief can be granted, or asserts a claim against a defendant immune from monetary relief. *See* 28 U.S.C. § 1915(e)(2)(B)(i)–(iii) (providing that "[n]otwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that-- . . . **(B)** the action or appeal-- **(i)** is frivolous or malicious; **(ii)** fails to state a claim on which relief may be granted; or **(iii)** seeks monetary relief against a defendant who is immune from such relief"). A complaint is frivolous under section 1915(e)(2)(B)(i) if it "lacks an arguable basis either in law or fact," *Neitzke v. Williams*, 490 U.S. 319, 325 (1989), and is legally baseless if it is "based on an indisputably meritless legal theory." *Deutsch v. United States*, 67 F.3d 1080, 1085 (3d Cir. 1995). As for whether a complaint is malicious, "[a] court that considers whether an action is malicious must, in accordance with the definition of the term 'malicious,' engage in a subjective inquiry into the litigant's motivations at the time of the filing of the lawsuit to determine whether the action is an attempt to vex, injure or harass the defendant." *Id.* at 1086.

The standard for dismissing a complaint for failure to state a claim pursuant to section 1915(e)(2)(B)(ii) is identical to the legal standard used when ruling on motions to dismiss under Federal Rule of Civil Procedure 12(b)(6). *See Tourscher v. McCullough*, 184 F.3d 236, 240 (3d Cir. 1999) (applying Rule 12(b)(6) standard to dismissal for failure to state a claim under § 1915(e)(2)(B)). In addressing whether a *pro se* plaintiff's complaint fails to state a claim, the court must liberally construe the allegations set forth in the complaint. *See Higgs v. Attorney Gen.*, 655

F.3d 333, 339–40 (3d Cir. 2011) (explaining that "when presented with a *pro se* litigant, we have a special obligation to construe his complaint liberally" (citation and internal quotation marks omitted)).

**B.     Factual Allegations**

In his fifth amended complaint, Woodell asserts claims against 17 defendants. In general, he alleges claims of deliberate indifference to his serious medical needs and claims of supervisory liability under section 1983. *See generally* 5th Am. Compl. at ¶¶ 1–121. However, as Woodell also notes at the very outset of his operative complaint, "[he] did receive and/or had not been denied medical care out right, but rather received a different form of treatment that was not effective adequate treatment." *Id*. at ECF p. 4.

From what the court can discern from the fifth amended complaint, Woodell's medical claims stem from his treatment and diagnosis of two different medical conditions. The first set of allegations stem from his August 2015 diagnosis of epilepsy and his continued treatment for seizures. *Id.* The second set of allegations pertain to his diagnosis and medical treatment concerning urinary retention and other abdomen/pelvic issues that he experienced in the summer of 2017. *Id.* at ¶¶ 79–83.

With regard to the individual defendants, Woodell alleges the following:

**1.     Dr. Weiner**

Woodell alleges that Dr. Weiner allegedly "allow[ed]" "experiment[s] with [Woodell]'s brain on medications not trained and [which he was] inexperienced to prescribe." *Id.* at ¶ 3. He also alleges that because of Dr. "Weiner's subsitute [sic] medical treatment, [this] allow[ed Woodell to] suffer facial re-swelling and issues of right eye pain." *Id.* at ¶ 57. Woodell further alleges that Dr. Weiner made medical decisions which led to him having an "instant seizure" and

6

that he "refuse[d] and/or denied to follow Temple emergency room physician instructions to follow up" with a neurologist. *Id.* at ¶¶ 67, 76. As for Woodell's urinary tract issues, he maintains that Dr. Weiner "delayed his need for an appointment with Urology for treatment." *Id*. at ¶ 86.

### 2.   Stephen Kaminsky

Woodell alleges that Kaminsky, who was on sick call and responded to emergency situations by taking actions such as "prescrib[ing] anti-convulsion medications," was "not qualified, educated, skilled and lack[ed] schooling in Neurology decision-making, that had resulted in numerous risk[s] to [Woodell]." *Id.* at ¶ 4. He further alleges that "Kaminsky should have inform[ed] his Supervisor [that] the treat-ment [sic] with anti-convulsion medication was complicated and other pain relievers for diagnosed psuedo [sic] seizures." *Id.*

### 3.   Dr. Scharff

Woodell alleges that Dr. Scharff "was aware of" Woodell's epilepsy and "urinary complications," and he "had the authority to consult complications with . . . [Dr.] Weiner the need of treatment which result[ed in] prolong[ed] urinary complication and other delayed prescribed treatment." *Id.* at ¶ 6. Woodell also avers that Dr. Scharf "is responsible for [Woodell]'s serious need of urinary complication delay and/or denied to provide urgent medical care; and Epilepsy treatment be schedule, and/or inform Defendant Weiner of assessment by Neurology for medical treatment." *Id*. at p. 34, ¶ 8.[3]

### 4.   Jeanne DeFrangesco

Woodell alleges that DeFrangesco is a licensed nurse practitioner who, "while working under color of state law, diagnosed and handle[d hi]s complicated medical needs with disregard to life." *Id.* at ¶ 5. Further, he avers that she was not qualified to diagnose and treat his complicated

---

[3] At a later point in the fifth amended complaint, Woodell creates a section titled "Civil Rights Violations," and restarted his numbered paragraphs there.

medical needs. *Id*. DeFrangesco also allegedly "unjustifiable [sic] refuse[d] and/or denied to examine [Woodell]'s first attempt of [sic] medical complication." *Id.* at ¶ 99. Woodell suggests that DeFrangesco, as a medical professional, took an oath to treat him, and yet she used her superiority "to bring out retaliation" as the case was pending. *Id*. at ¶¶ 101–02. For example, Woodell reports a situation in which he was experiencing symptoms of a seizure. *Id*. at ¶ 107. DeFrangesco allegedly did not examine him for a seizure, but merely took his temperature and gave him nausea medication. *Id*. at ¶ 108. Woodell further alleges that DeFrangesco never treated his actual medical issue, but rather blamed his behavior for his problems. *Id*.

### 5.    Joe Korszniak

Woodell asserts that Joe Korszniak ("Korszniak") was a health care administrator at SCI-Graterford during the relevant times set forth in the fifth amended complaint. *Id.* at ¶ 12. Woodell alleges that Korszniak was supposed to report his medical treatment progress to the defendant, Cynthia Link ("C. Link"). *Id*. Woodell also alleges that Korszniak was directly involved with his requests for additional medical treatment, in his capacity as the initial review grievance officer. *Id.* at ¶ 13. Woodell further states that he believes that Korszniak was not trained or educated to give medical treatment, and he did not give Woodell access to the specialists required to treat his seizures and neurological issues. *Id*. at ¶¶ 14–15. For example, Woodell alleges an incident where Korszniak denied a grievance pertaining to an increase in his Topamax seizure medication, which had caused him to suffer symptoms of seizures. *Id.* at ¶ 58.

### 6.    Bob Grossman

Bob Grossman ("Grossman"), a registered nurse, had knowledge of Woodell's seizures, yet denied him medication through his subordinates. *Id.* at ¶ 7. Woodell avers that Grossman was the supervising nurse of Tomasz Borzecki ("Borzecki"), Sam Jacobs ("Jacobs"), and other nurses.

*Id*. Woodell alleges that it was Grossman's duty to train subordinate nurses on the appropriate way to treat a patient with seizures, and his failure to adequately train the nurses led to Woodell's hardships with receiving proper medical attention. *Id*.

### 7.     Tomasz Borzecki

Borzecki was a medication line nurse at SCI-Graterford, who was employed to distribute medications, ointments. and creams to inmates. *Id.* at ¶ 8. Woodell alleges that Borzecki "interfered with, denied and/or delay [sic] [hi]s prescribed medication and course of treatment and care by a licensed, examining and treating Neurologist, in spite of the serious risk of harm, injury and possibly death." *Id*. For example, Woodell recounts an event occurring on June 25, 2017, where Borzecki did not provide him with medical treatment after informing him that his medications were discontinued. *Id*. at ¶ 60(c). Woodell also alleges that Borzecki did not prepare his prescribed medication during a housing unit lockdown, wherein Borzecki was supposed to distribute his medication three times a day. *Id*. at ¶ 60(d). As stated in Grievance 716882, Woodell alleges Borzecki repeatedly denied him medication. *Id* at ¶ 62. Woodell states that this occurred in the context of eleven months passing since his brain surgery, and that there were orders from a neurologist to have his medication available. *Id*. However, in response to his grievance, Woodell alleges that the defendant, Laura Banta ("Banta"), responded that Borzecki was not at the facility. *Id.* at ¶ 63.

### 8.     Sam Jacobs

Jacobs, who Woodell previously identified as Sam Doe, was employed as a dispensary nurse at SCI-Graterford during the relevant period. *Id.* at ¶ 9. Woodell asserts that Jacobs' duties included distributing prescribed medications and examining and carrying out medical care as directed by a treating physician. *Id*. Jacobs allegedly withheld medication and care without contact

with a supervisor, "in-spite [sic] of the risk of serious harm, injury, pain, and possibl[e] death . . . ." *Id.* For example, Woodell alleges that on May 29, 2017, Jacobs denied him his medication without consulting Grossman because Woodell was to go to an off-site medical appointment. *Id.* at ¶ 60(a).

### 9.      Jaime Link

Jaime Link ("J. Link") is a registered nurse superintendent. *Id.* at ¶ 68. Woodell complains that J. link was not trained on the appropriate techniques for treating individuals suffering from seizures.[4] *Id.* Woodell alleges J. Link restrained him with handcuffs during a seizure when he should not have done so. *Id.* at ¶ 69. Woodell further alleges that J. Link was not trained to use force during a medical situation, and in restraining Woodell, put him at risk for serious injury. *Id.* at ¶ 70; *see also id.* at ECF p. 35, ¶ 12.

### 10.     Cynthia Link

With respect to Cynthia Link ("C. Link"), the superintendent at SCI-Graterford, Woodell alleges that she is liable for the inaction and action of her subordinates in the medical department. *Id.* at ¶ 27. Woodell alleges, "[d]efendant [C. Link] made a decision, approximate[ly] one year after Plaintiff's brain surgery, push back to recant [sic] with [his] appeals, with Medical Department Nurse and [Dr.] Weiner denied serious medical treatment." *Id.* at ¶ 28. Further,

---

[4] Woodell identifies those treatment techniques as follows:

> Those standing and witnessing an Epileptic seizure should watch to see that the individual can breathe while unconscious and is not in any physical danger from the surrounding. The person should not be restrained or held down but permitted to move freely: something soft should be placed beneath the head. Tight clothing, particularly around the neck, should be loosened, the mouth should not be forced open. Reasons to call an ambulance include consciousness not being regained after the seizure, a seizure lasting for five minutes or longer or a second seizure occurring immediately after the first one. Bystander [sic] can be most helpful by remaining calm and reassuring the suffer[er].

5th Am. Comp. at ¶ 68.

Woodell alleges that C. Link lacked the authority to dictate such medical decisions to deny his Epilepsy medication. *Id*. For example, Woodell alleged that C. Link denied him medication prescribed by a physician at Temple. *Id*. at ¶ 64. In denying his medication, Woodell suggests that C. Link failed to supervise the "medication conflict that Temple request[ed] under no circumstance are able to be stop [sic]." *Id*. Woodell further alleges that this act by C. Link created an unreasonable risk of harm to him. *Id.*

### 11.    Laura Banta

Woodell claims that Banta is "supervisory liable" as a deputy superintendent. *Id.* at ¶ 24. Specifically, Woodell claims that Banta is liable for her subordinates' mistreatment of his medical conditions. *Id.* For example, Woodell alleges that under Banta's supervision, Dr. Weiner did not permit him to follow up with Temple Neurology to determine the "appropriate handle on [hi]s condition." *Id.* He further alleges that Banta did not have properly trained personnel who were working in the medical department. *Id.* at ¶ 25. Woodell claims that it "must be a choice" for Banta to allow untrained nurses and other staff members to make medical decisions about his care. *Id.*

### 12.    George Ondrejka

Woodell alleges that George Ondrejka ("Ondrejka") is liable in a supervisory capacity as he also serves as a deputy superintendent. *Id.* at ¶ 16. Woodell alleges that Ondrejka "had knowledge [of] the subordinate misconduct to consequences [sic] and maintain[e]d a policy, practice, or customs [sic]" which led to a serious risk of harm. *Id.* Woodell further claims that Ondrejka "refused and/or denied to exam[ine] and attend to injuries [and] failed to respond in supervise [sic] capacity." *Id.* at ¶ 17.

### 13.    Joseph Terra

Woodell also alleges that Joseph Terra ("Terra") can be held liable in a "supervisory capacity" as a deputy superintendent. *Id.* at ¶ 20. Under Terra's supervision, Dr. Weiner denied Woodell medical treatment for "non medical reasons." *Id.* Further, Terra "had knowledge [that] a nurse did not respond to [Woodell's] seizure." *Id.* at ¶ 19. Woodell further claims that he was approximately one-year removed from brain surgery when Terra "delay[ed]/denied treatment" which was necessary to treat complications. *Id.* at ¶ 20.

### 14.   Tammy Ferguson

Woodell asserts that Ferguson, while not properly educated or trained in "Neurology, Urology and/or other complicated medical problem's [sic]," made decisions which "delayed and denied" necessary medical treatment for him. *Id.* at ¶ 37. Woodell further alleges that Ferguson acted as the decision maker at the second level of the grievance procedure, and she is "liable for unconstitutional acts taken by subordinates." *Id.* at ¶ 38.

### 15.   Mandy Sipple

Woodell claims that Mandy Sipple ("Sipple") is "supervisory liable in two official capacit[ies]" within SCI-Phoenix. *Id.* at ¶ 30. Woodell avers that Sipple knowingly violated "Pa. D.O.C. policy and [d]irective[s], Inmate Access to Health Care Services 13.2.1 and/or DC-ADM 820." *Id.* at ¶ 32.  Sipple also allegedly "had knowledge" that Woodell was "treated by unnecessary use of [a] catheter/foley." *Id.* at ¶ 31. Woodell further claims that Sipple denied him appropriate medical attention (in the form of prescribed epilepsy medications from Temple University) in "retalia[tion]" and for "non-medical reasons." *Id.* at ¶ 34. Additionally, Sipple allegedly failed to reply to a grievance correctly as "a cover up for Defendant DeFrangesco's retaliation." *Id.* at ¶ 115.

### 16.    Dorina Varner

Woodell alleges that Dorina Varner ("Varner") "faile[d] to maintained [sic] policies, practices, and customs of [the] Inmate Grievance System." *Id.* at ¶ 43. Woodell further alleges that Varner denied his "final level appeal" to "delay and/or denied [sic] prescribed seizure medications." *Id.* at ECF p. 36, ¶ 25. Varner also allegedly allowed Woodell to be "charge[d] for chronic illness and/or emergency [e]pilepsy treatment." *Id.*

### 17.    John Silva

Woodell asserts that John Silva ("Silva") did "not forward a grievance response as the final level [g]rievance [o]fficer," when required to under the grievance system. *Id.* at ¶ 46. Silva, a supervisor who wrote and implemented the policy, "held up [a] decision with [Woodell's] continuous final level appeal." *Id.* at ¶ 65. Woodell claims that this delay led to a serious risk of harm and to a denial of medical treatment. *Id.*

### C.    Analysis

At a high level, the subject matter of Woodell's claims appears largely the same, *i.e.*, medical professionals' failure to provide him with adequate medical treatment and the failure of those in charge to properly supervise the actions of these medical professionals. The court addresses these claims in turn. The court will then briefly address Woodell's denial of access to courts claim although it is unclear to the court against which defendants he is asserting this claim. Lastly, the court touches on Woodell's official capacity claims and his request for sanctions.

### 1.    Deliberate Indifference to Serious Medical Needs Claims

The court has construed Woodell's claims against Dr. Weiner, Kaminsky, Dr. Scharff, DeFrangesco, Korszniak, Borzecki, Jacobs, and J. Link to be Eighth Amendment claims for

deliberate indifference to his serious medical needs.[5] To state a deliberate indifference claim, Woodell must allege facts, which if true, could "make (1) a subjective showing that the defendants were deliberately indifferent to [his . . .] medical needs and (2) an objective showing that those needs were serious." *Pearson v. Prison Health Serv.*, 850 F.3d 526, 534 (3d Cir. 2017) (part of alteration in original) (citations and quotation marks omitted). As to the first prong, a showing of deliberate indifference requires the plaintiff to establish "something more than mere negligence[.]" *Id.* The standard requires culpability, *i.e.*, "the official [must] both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists and to also draw the inference." *Id.* at 538 (citation and internal quotation marks omitted). Examples of the required degree of deliberate indifference include when:

> (1) prison authorities deny reasonable requests for medical treatment, (2) knowledge of the need for medical care is accompanied by the intentional refusal to provide it, (3) necessary medical treatment is delayed for non-medical reasons, and (4) prison authorities prevent an inmate from receiving recommended treatment for serious medical needs.

*Id.* (citation omitted).

> As to the second prong, a medical need qualifies as
>
> serious . . . if it is one that has been diagnosed by a physician as requiring treatment or one that is so obvious that a lay person would easily recognize the necessity for a doctor's attention. The seriousness of an inmate's medical need may also be determined by reference to the effect of denying the particular treatment.

*Monmouth Cty. Corr. Inst. Inmates v. Lanzaro*, 834 F.2d 326, 347 (3d Cir. 1987) (internal quotation marks and citations omitted). Courts also may consider a condition "serious" "where denial or delay causes an inmate to suffer a life-long handicap or permanent loss." *Id.* Conditions such as seizures generally qualify as a "serious medical condition." *See Conchewski v. Camden*

---

[5] In an abundance of caution, the court in this section will also briefly address possible deliberate indifference claims against Sipple, Varner, Silva, and C. Link in the context of denying grievances.

*Cty.*, Civ. A. No. 11–2781(NLH), 2014 WL 1153779, at *9 (D.N.J. Mar. 21, 2014) ("Here, there is no debate that a seizure disorder constitutes a serious medical condition.").

In the present case, Woodell's claims relate to the defendants' deliberate indifference to his seizures and to problems pertaining to urinary retention and other abdomen/pelvic issues. Woodell includes allegations throughout the operative complaint that various defendants repeatedly refused to provide him with "specialized treatments and other medication that licensed, trained, experienced and schooled in Neurology and Urology [professionals] have diagnosed and prescribed determinations and treatments." 5th Am. Compl. at ¶ 3.

Even if Dr. Weiner, Kaminsky, Dr. Scharff, DeFrangesco, Korszniak, Borzecki, Jacobs, and J. Link erred in making or executing medical decisions pertaining to Woodell's medications, Woodell does not allege facts sufficient to state a plausible claim for deliberate indifference on the part of any of the defendants, *i.e.*, "acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). Instead, Woodell alleges mere disagreement with the various defendants' treatment decisions or, at best, medical malpractice. *See Bailey v. Palakovich*, No. 4:CV-06-1640, 2007 WL 1450698, at *6 (M.D. Pa. May 14, 2007) (citations omitted) (finding disagreement with medical attention and accommodations insufficient to establish Eighth Amendment claim). There are no allegations in the fifth amended complaint suggesting that any of the defendants were deliberately indifferent to Woodell's medical needs. Rather, Woodell himself admits that he "did receive and/or had not been denied medical care out right, but rather received a different form of treatment that was not effective adequate treatment." 5th Am. Compl. at ECF p. 4. However, disagreement with medical decisions is not enough to establish a claim for deliberate indifference, nor is a physician's negligence. *See Estelle*, 429 U.S. at 106 ("[A] complaint that a physician has been negligent in

15

diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner.").

Furthermore, the court notes that "considerable latitude [is given] to prison medical authorities in the diagnosis and treatment of the medical problems of inmate patients," so Woodell's claims that he received a different form of treatment than what other reputable doctors suggested is not itself enough to advance a claim under the Eighth Amendment. *Inmates of Allegheny Cty. Jail v. Pierce*, 612 F.2d 754, 762 (3d Cir. 1979); *see also White v. Napoleon*, 897 F.2d 103, 110 (3d Cir. 1990) ("[C]ertainly, no claim is presented when a *doctor* disagrees with the professional judgment of another doctor. There may, for example, be several ways to treat an illness."). Woodell's personal dissatisfaction with the treatment provided by various defendants is not the basis for a deliberate indifference claim. *See Moore v. Luffey,* 767 F. App'x 335, 340–41 (3d Cir. 2019) ("This claim, like his HCV treatment claim, is based only on Moore's personal dissatisfaction with Dr. Rossino's treatment, which is not a basis for a deliberate indifference claim." (citation omitted)). Nonetheless, the court examines Woodell's various allegations against the defendants in turn.

With respect to Dr. Weiner, Woodell's allegations do not state a plausible deliberate indifference claim, as Woodell does not allege a non-medical motive on the part of Dr. Weiner for deliberately avoiding the treatment that another physician recommended. While it may be true that "[Dr.] Weiner's substitute medical treatment[] allow[ed] Plaintiff [to] suffer facial re-swelling and issues of right eye pain," and other medical decisions of Dr. Weiner may have led to Woodell having an "instant seizure," these allegations do not demonstrate deliberate indifference on Dr. Weiner's part. 5th Am. Compl. at ¶¶ 57, 67. Rather, these allegations show that Dr. Weiner

16

repeatedly tried to address Woodell's medical issues, as his decisions led to the medical staff taking actions such as giving Woodell anti-convulsion medication and taking blood. *Id.* at ¶ 2. While Woodell also alleges that Dr. Weiner experimented with Woodell's brain, presumably by prescribing him medication that Woodell thinks Dr. Weiner was not experienced enough as a physician to prescribe, there is nothing in the operative complaint that supports Dr. Weiner's lack of experience. *Id.* at ¶ 3. Furthermore, the court finds that such an allegation also demonstrates that it cannot be said that Dr. Weiner denied Woodell medical care, even if Woodell disagrees with his treatment choices. *See, e.g.*, *Brown v. Borough of Chambersburg*, 903 F.2d 274, 278 (3d Cir. 1990) ("[A]s long as a physician exercises professional judgment his behavior will not violate a prisoner's constitutional rights." (citation omitted)); *see also Little v. Lycoming Cty.*, 912 F. Supp. 809, 816 (M.D. Pa. 1996) ("The key question ... is whether defendants have provided plaintiff with some type of treatment, regardless of whether it is what plaintiff desires." (citation and internal quotation marks omitted)).

As for Kaminsky, and as indicated above, Woodell alleges that he took actions such as "prescrib[ing] anti-convulsion medications" that he was "not qualified, educated, skilled and lack[ed] schooling in Neurology decision-making [to prescribe], that had resulted in numerous risk[s] to Plaintiff." 5th Am. Compl. at ¶ 4. Woodell also alleges that Kaminsky should have informed his supervisor that the treatment was complicated. *Id.* Again, the court cannot find that these allegations, even if taken as true, rise to the level of deliberate indifference simply because Woodell disagrees with the treatment Kaminsky gave him.

Regarding Dr. Scharff, the only allegation the court can discern is that he "is responsible for [Woodell]'s serious need of urinary complication delay and/or denied to provide urgent medical care; and Epilepsy treatment be schedule, and/or inform [Dr.] Weiner of assessment by

17

Neurology for medical treatment." *Id.* at ECF p. 34, ¶ 8. As a result, there are insufficient facts alleged in the operative complaint to allow Woodell to proceed with a deliberate indifference claim against Dr. Scharff, as it is unclear what actions, if any, Dr. Scharff took that were made with deliberate indifference.

 Similarly, with respect to DeFrangesco, the allegations Woodell raises have to do with treatment disagreements, such as when DeFrangesco allegedly did not examine Woodell for a seizure, but merely took his temperature and gave him nausea medication. *Id.* at ¶ 108. Again, this does not rise to the level of deliberate indifference.

Nonetheless, the court notes that Woodell raises a possible non-medical motive on the part of DeFrangesco for her allegedly inadequate treatment decisions which is to "to bring out retaliation, continuously hold that medical care strategy as this case is pending." *Id.* at ¶ 102. Despite this blanket statement, Woodell does neither elaborates further on this claim nor provides any further factual allegations to support it. However, because the court holds that Woodell's claims against to DeFrangesco for deliberate indifference fail, this necessarily means that he cannot not show an improper motive in support of a retaliation claim. *See Powell v. Beard*, 288 F. App'x 7, 8 (3d Cir. 2008) (per curiam) ("[T]he District Court granted summary judgment as to both claims on the basis that Powell's failure to show deliberate indifference necessarily meant that he could not show an improper motive in support of his retaliation claim. We will affirm.").

Regarding his claim against Korszniak, Woodell's allegations seem to center around Korszniak, as the initial review grievance officer, denying Woodell's grievances, and that Korszniak was unqualified to review Woodell's medical grievances. 5th Am. Compl. at ¶¶ 12–14. There are no allegations that would support a finding of deliberate indifference on Korszniak's part because Korszniak was not a treating doctor of Woodell and the operative complaint shows

that Woodell was receiving care on an on-going basis. Thus, Korszniak's failure to respond to Woodell's grievances positively cannot be considered deliberate indifference. *See Scantling v. Vaughn*, Civ. A. No. 03-67, 2004 WL 306126, at *9 (E.D. Pa. Feb. 12, 2004) (finding that "[t]he defendants whose only contact with the plaintiff involved denying his grievances or upholding such denials on appeal are: Vaughn, Hatcher, James, Knauer, Kyler, and Burk. There are no allegations that would support a finding that any of these defendants were deliberately indifferent" and "[t]hese defendants are not doctors, and Mr. Scantling's pleadings show that he has been receiving medical care on a regular and on-going basis. Their failure to respond favorably to the plaintiff's complaints cannot be considered deliberate indifference."). To the extent that Woodell was asserting deliberate indifference claims against Sipple, Varner, Silva, and/or C. Link based on their failures to review or grant his grievances, any deliberate indifference claims against them also fail.

With respect to Borzecki, he allegedly "interfered with, denied and/or delay [sic] [Woodell]'s prescribed medication and course of treatment, and care by a licensed, examining and treating Neurologist, in spite of the serious risk of harm, injury and possibly death." 5th Am. Compl. at ¶ 8. Even if Borzecki erred in making or executing medical decisions pertaining to Woodell's medications, Woodell does not allege facts sufficient to state a plausible claim for deliberate indifference, as he once again only alleges mere disagreement with Borzecki's treatment decisions or malpractice. There are no additional <u>factual</u> allegations in the fifth amended complaint suggesting that Borzecki was deliberately indifferent to Woodell's medical needs. Rather, all that is still apparent from the fifth amended complaint is that Borzecki was unwilling to provide Woodell with medication that a doctor had discontinued, was unwilling to contact a physician or supervisors about the decisions made pertaining to Woodell's medication, and that Borzecki did

not provide Woodell with his necessary medication during a unit lockdown.[6] 5th Am. Compl. at ¶¶ 60–63. Furthermore, when Woodell complained of the lack of medication being given by Borzecki in a grievance, according to his own complaint, he was informed that Borzecki was not at the facility. *Id.* at ¶ 63. Therefore, there are not enough facts alleged in the fifth amended complaint to allow Woodell to proceed with a deliberate indifference claim against Borzecki.

With respect to Jacobs, Woodell alleges that he withheld medication and care without contact with a supervisor, "in-spite of the risk of serious harm, injury, pain, and possibly death . . . ." *Id.* at ¶ 9. Woodell references an incident on May 29, 2017, in which Jacobs allegedly denied him his medication without consulting Grossman because Woodell was to go to an off-site medical appointment. *Id*. at ¶ 60(a). These allegations are insufficient to state a claim for deliberate indifference against Jacobs because, at best, Woodell alleges mere disagreement with Jacobs' treatment decision to withhold medication prior to an off-site medical appointment.[7]

Concerning J. Link, Woodell alleges that he restrained him during a seizure and that restraining a person during a seizure is not the proper medical way of handling such a situation. 5th Am. Compl. at ¶ 70. It is not apparent from the operative complaint that Woodell suffered any injury from the medical decision to restrain him. Furthermore, such restraint is a medical decision that Woodell may have disagreed with, but again, mere disagreement on treatment is not enough for a deliberate indifference claim.

At bottom, despite taking the facts in the fifth amended complaint as true and providing Woodell with all reasonable inferences arising from those facts, he simply cannot make out an

---

[6] The court notes that Woodell does not allege that the failure to provide him with medication during the unit lockdown caused him to suffer any actual injury. *See, e.g.*, *Griffin v. Malisko*, No. 1:18-cv-1155, 2018 WL 5437743, at *4 (M.D. Pa. Oct. 29, 2018) ("Plaintiff has not averred that he suffered from any actual injury resulting from the alleged brown water, and thus, has not established a constitutional violation." (citations omitted)).

[7] Also, as previously mentioned with regard to Woodell's claims against Borzecki, Woodell has not alleged that he was actually injured due to the alleged failure to provide him with medication prior to the off-site medical appointment.

Eighth Amendment deliberate indifference claim against these defendants. Thus, the court must dismiss these claims. The court will dismiss these claims with prejudice because the court has already granted Woodell leave to amend and assert additional allegations four separate times, and each time Woodell has been unable to allege additional facts that could support a finding of deliberate indifference with respect to these defendants. The court therefore finds amendment at this stage of the proceedings would be futile when it comes to Woodell's deliberate indifference claims. *See Jones v. Unknown D.O.C. Bus Driver & Transp. Crew*, 944 F.3d 478, 483 (3d Cir. 2019) (concluding amendment by *pro se* prisoner would be futile when prisoner "already had two chances to tell his story"); *Fletcher-Harlee Corp. v. Pote Concrete Contractors, Inc.*, 482 F.3d 247, 252 (3d Cir. 2007) ("[I]n civil rights cases district courts must offer amendment—irrespective of whether it is requested—when dismissing a case for failure to state a claim unless doing so would be inequitable or futile."); *Grayson v. Mayview State Hosp.*, 293 F.3d 103, 114 (3d Cir. 2002) (explaining that "*in forma pauperis* plaintiffs who file complaints subject to dismissal under Rule 12(b)(6) should receive leave to amend unless amendment would be inequitable or futile"). Thus, the court turns to Woodell's remaining section 1983 claims, which Woodell alleges are based on "supervisory liability."

### 2.      Supervisory Liability Claims

The court has construed Woodell's claims against Grossman, C. Link, Korszniak, Banta, Ondrejka, Terra, Ferguson, Sipple, Varner, and Silva to be claims brought under section 1983 involving supervisory liability. To adequately plead a section 1983 claim, a plaintiff must allege that the named defendants had "personal involvement in the alleged wrongs," because section 1983 "liability cannot be predicated solely on the operation of *respondeat superior*." *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988) (citations omitted). A plaintiff appropriately

pleads personal involvement "through allegations of personal direction or of actual knowledge and acquiescence. Allegations of participation or actual knowledge and acquiescence, however, must be made with appropriate particularity." *Id.*

In the instant case, Woodell's claims against the above-named defendants largely suffer from two pleading flaws: (1) his failure to allege with specificity how these defendants personally participated in the alleged wrongdoing and (2) his attempt to assign liability based on *respondeat superior*. "[A] supervisor may be personally liable under § 1983 if he or she participated in violating the plaintiff's rights, directed others to violate them, or, as the person in charge, had knowledge of and acquiesced in his subordinates' violations." *A.M. ex rel. J.M.K. v. Luzerne Cty. Juvenile Det. Ctr.*, 372 F.3d 572, 586 (3d Cir. 2004). Allegations of personal involvement "must be made with appropriate particularity." *Rode*, 845 F.2d at 1208 (citations omitted). The court examines Woodell's claims against the various defendants in turn.

With respect to Grossman, Woodell does not allege personal involvement with appropriate particularity that would amount to a plausible section 1983 claim. Simply alleging that Grossman had knowledge of Woodell's seizures and was in charge of supervising or training those that administered Woodell's medications is insufficient. *See* 5th Am. Compl. at ¶ 7. Even taking Woodell's allegations against Grossman as true, there is nothing in the fifth amended complaint that would make Grossman liable under a theory of supervisory liability.

As for C. Link, Woodell alleges that she is liable as a supervisor because she is the SCI-[Graterford] decision maker to subordinates actions [and] inactions in the Medical Department." *Id.* at ¶ 27. Throughout his fifth amended complaint, Woodell complains that C. Link made bad medical decisions with regard to his medical care and with respect to the grievances he raised. *See id.* at ¶ 28. These claims against C. Link fail because simply reviewing and denying grievances

does not satisfy the "personal involvement" requirement for section 1983 claims.[8] *See Altenbach v. Ianuzzi*, 646 F. App'x 147, 151 (3d Cir. 2016) (per curiam) ("To the extent that [the plaintiff's] claim is based on [the nurse supervisor's] alleged failure to satisfactorily resolve his grievances, the District Court was similarly correct in dismissing it." (citation omitted); *Rogers v. United States*, 696 F. Supp. 2d 472, 488 (W.D. Pa. 2010) ("If a grievance official's only involvement is investigating and/or ruling on an inmate's grievance after the incident giving rise to the grievance has already occurred, there is no personal involvement on the part of that official." (citing *Rode*, 845 F.2d at 1208)). Any other claims against C. Link also fail, as Woodell does not state with particularity how C. Link was involved or acquiesced in violating Woodell's rights.

With respect to Banta, Woodell's claims also fail as it is insufficient to simply allege that Banta is liable in her capacity as deputy superintendent for her subordinates' mistreatment of his medical needs. 5th Am. Compl. at ¶ 24. While Woodell claims that it "must be a choice" for Banta to allow untrained nurses and other staff members to make medical decisions regarding his care, he has not alleged anything close to personal involvement or acquiescence in any violations of his rights. *Id.*

Similarly, regarding his claims against Ondrejka, Woodell alleges that Ondrejka is liable in a supervisory capacity because of his position as a deputy superintendent and because of the failure of his subordinates to treat Woodell's medical needs. *Id.* at ¶ 16. Again, Woodell's claims fail for lack of personal involvement.

This is also true with respect to Woodell's claims against Terra, who he asserts is liable in a "supervisory capacity" as deputy superintendent. *Id*. at ¶ 20. Woodell also alleges that under Terra's supervision, Dr. Weiner denied his medical treatment for "non medical [sic] reasons." *Id.*

---

[8] Similar to Woodell's claims against C. Link, the court must also dismiss his claims pertaining to Korszniak insofar as they relate to Korszniak's failure to resolve grievances in Woodell's favor.

at ¶ 20. However, Woodell's claims again fail for lack of personal involvement. This is the same with respect to Ferguson, who Woodell alleges is "liable for unconstitutional acts taken by subordinates." *Id.* at ¶ 38.

As for his claims against Sipple, Woodell alleges that she is "supervisory liable in two official capacit[ies]." *Id.* at ¶ 30. He further alleges that she "had knowledge" that he was "treated by unnecessary use of [a] catheter/foley." *Id.* at ¶ 31. Once again, Woodell's claim fails because he cannot assert a claim under a theory of *respondeat superior* liability without personal involvement, and simply having knowledge of Woodell's medical treatment is not enough. While Woodell also claims that Sipple denied him appropriate medical attention in "retalia[tion]" and for "non-medical reasons" and that she allegedly failed to reply to a grievance correctly as "a cover up for . . . Defrangesco's retaliation," as the court has already noted, failure to satisfactorily resolve grievances does not amount to personal involvement. *Id.* at ¶¶ 34, 115.

With respect to Varner, Woodell alleges that Varner "faile[d] to maintained [sic] policies, practices, and customs of [the] Inmate Grievance System." *Id.* at ¶ 43. Woodell further alleges that Varner denied his "final level appeal" to "delay and/or denied [sic] prescribed seizure medications." *Id.* at ECF p. 36, ¶ 25. Again, Varner's denial of Woodell's grievances cannot amount to personal involvement. *See Altenbach*, 646 F. App'x at 151. Furthermore, to the extent Woodell asserts claims against Varner or any other defendant, such as Silva, based on the policies, practices, and customs of the Inmate Grievance System, these claims also fail as a matter of law because "an inmate has no constitutional right to a grievance procedure." *Tapp v. Proto*, 404 F. App'x 563, 566 (3d Cir. 2010) (per curiam) (citation omitted).

Similarly, with respect to Silva, while Woodell alleges that Silva did "not forward a grievance response as the final level [g]rievance [o]fficer," again any claim must fail for lack of

personal involvement and because an inmate has no constitutional right to a grievance procedure. 5th Am. Compl. at ¶ 46.

In summation, given that Woodell's section 1983 claims pertaining to supervisory liability all fail, the court dismisses these claims against the named defendants. As with the deliberate indifference claims, the court dismisses these claims with prejudice as the court has already provided Woodell with multiple opportunities to amend his complaint, and any further attempt to amend would be futile. The court therefore turns to Woodell's access to the courts claim.

### 3.   Access to Courts Claim

"Under the First and Fourteenth Amendments, prisoners retain a right of access to the courts." *Monroe v. Beard*, 536 F.3d 198, 205 (3d Cir. 2008) (citing *Lewis v. Casey*, 518 U.S. 343, 346 (1996)). This right, however, is not unlimited:

> prisoners may only proceed on access-to-courts claims in two types of cases, challenges (direct or collateral) to their sentences and conditions of confinement. Where prisoners assert that defendants' actions have inhibited their opportunity to present a past legal claim, they must show (1) that they suffered an "actual injury"—that they lost a chance to pursue a "nonfrivolous" or "arguable" underlying claim; and (2) that they have no other "remedy that may be awarded as recompense" for the lost claim other than in the present denial of access suit. To that end, prisoners must satisfy certain pleading requirements: The complaint must describe the underlying arguable claim well enough to show that it is "more than mere hope," and it must describe the "lost remedy."

*Id.* at 205–06 (internal citations and footnote omitted).

Here, it appears that Woodell is arguing that he was unable to timely file a habeas petition and other documents because of the improper medical treatment he received. *See* 5th Am. Compl. at ECF pp. 31–32. Woodell alleges that his "untreated neurological and seizure condition and seizures hampered [hi]s ability physically and mentally causing fatigue of cognitive skills, about to think, write, research, seek counsel or legal assistance in his criminal conviction." *Id.* at ¶ 135. He further maintains that if certain "tests were performed the abnormalities of his Right Temporal

Lobe to the hippocampus shrinking would have been discovered, which would have possibly tolled [hi]s filing deadline . . . ." *Id.* at ¶ 137. He also asserts that he "was under the care, custody, and control of Defendant's [sic] who due to their lacking of training, experience, schooling and skills in Neurology, when [he] complained of experiencing treatable problems, the Defendants ignored those complaints," and failed to secure the proper medical care. Because of this alleged lack of proper medical care, Woodell claims "Defendants interfered with and hampered [hi]s ability to secure assistance in research, filing, and refiling of his claims and petitions. . . ." *Id.* at ¶ 138.

As this court has already stated in its memorandum opinion of August 30, 2019, "Woodell clearly took advantage of the opportunity to file an appeal of his criminal conviction, a PCRA action, and a federal habeas petition. As such, the court struggles to see how any of the defendants impeded his access to the courts." Aug. 30, 2019 Mem. Op. at 32. While the court initially dismissed Woodell's access to courts claim without prejudice, the court noted that "[i]f Woodell intended to assert such a claim, he must do so with greater specificity *and* while being mindful of the statute of limitations." *Id.* at 33 (footnote omitted). The court finds that Woodell has not been able to assert any access to courts claim with greater specificity, and therefore the court must against dismiss this claim. This time, however, the court dismisses with prejudice, as the court finds that amendment would be futile based on the facts alleged and Woodell's past unsuccessful attempts at amendment.

### 4.    Official Capacity Claims

In the fifth amended complaint, Woodell attempts to assert claims against various defendants in their official capacities. *See* 5th Am. Compl. at ECF p. 14, ¶ 48 ("Plaintiff sues each Commonwealth Defendants [sic] in both their individuals [sic], and official capacities for acts outside the lines of their statutory duties, and responsibilities violating the Plaintiff's rights,

directed others to violate them, or as a person in charge had knowledge [of] subordinate's unconstitutional conduct to delayed and/or denied specialized diagnosis, prescribed medication as this case here, failure to supervise – are generally considered performance standards the policy and/or directives caused Plaintiff'[s] risk, injuries, and failure to implement the supersory [sic] practice and/or procedure."). Recognizing that the court has dismissed all claims against the defendants in this matter, the court also notes that Woodell could not assert a claim for damages against the "Commonwealth Defendants" in their official capacities.

In this regard, the Eleventh Amendment states that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI. The Eleventh Amendment serves as "a jurisdictional bar which deprives federal courts of subject matter jurisdiction." *Blanciak v. Allegheny Ludlum Corp.*, 77 F.3d 690, 694 n.2 (3d Cir. 1996). It also bars a party from seeking monetary damages from a state official acting in his or her official capacity unless "waiver by the State or valid congressional override." *See Kentucky v. Graham*, 473 U.S. 159, 169 (1984) ("[T]he Eleventh Amendment bars a damages action against a State in federal court[, and t]his bar remains in effect when State officials are sued for damages in their official capacity."). This bar is in place because, even though state officials literally are persons[,] . . . a suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office. As such, it is no different from a suit against the state itself." *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989) (internal citation omitted); *see also Melo v. Hafer*, 912 F.2d 628, 635 (3d Cir. 1990) (stating that the Eleventh Amendment "also bars a suit against state officials in their official capacity,

because the state is the real party in interest inasmuch as the plaintiff seeks recovery from the state treasury").

By enacting section 1983, Congress did not intend to abrogate Eleventh Amendment immunity. *See Quern v. Jordan*, 440 U.S. 332, 344-45 (1979) (stating that "§ 1983 does not explicitly and by clear language indicate on its face an intent to sweep away the immunity of the States; nor does it have a history which focuses directly on the question of state liability and which shows that Congress considered and firmly decided to abrogate the Eleventh Amendment immunity of the States"). Additionally, the Commonwealth of Pennsylvania has enacted 42 Pa. C.S. § 8521(b), which expressly indicates that the Commonwealth has not waived its Eleventh Amendment immunity from suit in federal courts. *See* 42 Pa. C.S. § 8521(b) ("Nothing contained in this subchapter shall be construed to waive the immunity of the Commonwealth from suit in Federal courts guaranteed by the Eleventh Amendment to the Constitution of the United States."); *see also Lavia v. Pennsylvania Dep't of Corr.*, 224 F.3d 190, 195 (3d Cir. 2000) (explaining that Pennsylvania has not waived Eleventh Amendment immunity).

As the Department of Corrections is a state agency of the Commonwealth of Pennsylvania, *see* 71 P.S. § 310-1, and the "Commonwealth Defendants," who the court interprets to be C. Link, Banta, Ondrejka, Terra, Ferguson, Sipple, Varner, and Silva based on their employment with the Department of Corrections, are state officials, they are entitled to Eleventh Amendment immunity with regard to Woodell's damages claims against them in their official capacities.[9] Pennsylvania has not waived their Eleventh Amendment immunity. *See* 1 Pa. C.S. § 2310 ("[I]t is hereby

---

[9] The court notes that while in the caption of the fifth amended complaint Woodell lists all 17 defendants as being sued in their individual and official capacities, *see* 5th Am. Compl. at ECF p. 1, in the body of the complaint Woodell only attempts to assert official capacity claims against those he refers to as the "Commonwealth Defendants." *See id.* at ECF p. 14, ¶ 48. Woodell appears to identify the other defendants collectively as the "Medical Defendants." *See, e.g.*, 5th Am. Compl. at ¶ 51. Since the court cannot conceive of official capacity claims against the other defendants, who are private parties, named in this lawsuit, the court only addresses Woodell's official capacity claims against the defendants who are allegedly employed by the Department of Corrections.

declared to be the intent of the General Assembly that the Commonwealth, and its officials and employees acting within the scope of their duties, shall continue to enjoy sovereign immunity and official immunity and remain immune from suit except as the General Assembly shall specifically waive the immunity."). Therefore, the court will dismiss Woodell's claims for monetary damages against C. Link, Banta, Ondrejka, Terra, Ferguson, Sipple, Varner, and Silva in their official capacities. While any official capacity claims are dismissed without prejudice due to lack of subject-matter jurisdiction, the court will not grant leave to amend.

### 5.    Request for sanctions

In the fifth amended complaint, Woodell asks the court to "impose sanctions to Medical Defendants and/or Commonwealth Defendants [because they] present[ed] frivolous response with lack of information pursuant to Rule 11(c). . . ." 5th Am. Compl. at ¶ 51. The court declines to issue any such sanctions in this case.

Rule 11(c) allows for sanctions,

(1) *In General*. If, after notice and a reasonable opportunity to respond, the court determines that Rule 11(b) has been violated, the court may impose an appropriate sanction on any attorney, law firm, or party that violated the rule or is responsible for the violation. Absent exceptional circumstances, a law firm must be held jointly responsible for a violation committed by its partner, associate, or employee.

(2) *Motion for Sanctions*. A motion for sanctions must be made separately from any other motion and must describe the specific conduct that allegedly violates Rule 11(b). The motion must be served under Rule 5, but it must not be filed or be presented to the court if the challenged paper, claim, defense, contention, or denial is withdrawn or appropriately corrected within 21 days after service or within another time the court sets. If warranted, the court may award to the prevailing party the reasonable expenses, including attorney's fees, incurred for the motion.

Fed. R. Civ. P.11(c). Rule 11 only authorizes sanctions against the signer of any pleading, motion or other paper. *See* Fed. R. Civ. P. 11(b); *see also Landon v. Hunt*, 938 F.2d 450, 453 (3d Cir. 1991) ("We have consistently held that 'Rule 11 sanctions are proper *only* in situations involving a signed pleading.'" (emphasis in original) (quoting *Schering Corp. v. Vitarine Pharm., Inc.,* 889

F.2d 490, 496 (3d Cir. 1989))). Here, while Woodell alleges that the medical and/or Commonwealth defendants submitted a frivolous response, the court is unsure what pleading, motion, or paper he is referring to, as he does not specify this in his fifth amended complaint, and no motions by any defendant are currently pending before the court. Furthermore, Woodell's request for sanctions fails as "[a] motion for sanctions must be made separately from any other motion and must describe the specific conduct that allegedly violates Rule 11(b)." Fed. R. Civ. P.11(c). Here, Woodell's one sentence request for sanctions, included in a fifth amended complaint (which the court notes is not a separate motion), does not describe any specific conduct that allegedly violates Rule 11(b). As such, the court denies Woodell's request for sanctions on this ground as well.

### III.    CONCLUSION

As described above, Woodell's claims fail to state a claim for relief because (1) he cannot make out an Eighth Amendment deliberate indifference claim against any of the named defendants, (2) he failed to allege with specificity how the defendants personally participated in the alleged wrongdoing, and (3) he improperly attempted to assign liability based on a theory of *respondeat superior*. Woodell's access to the courts claim also fails for lack of specificity, and his official capacity claims fail due to Eleventh Amendment immunity. Additionally, the court finds no basis to impose sanctions on any party in this case. Given that Woodell has already amended his complaint five times and the court has sufficiently warned him that the court could dismiss any amended complaint with prejudice if he was not mindful of the court's reasoning in dismissing his previous claims without prejudice, the court finds that the dismissal of Woodell's entire fifth amended complaint is appropriate in this case. Woodell's claims are dismissed with prejudice,

except for his official capacity claims, which are dismissed without prejudice for lack of subject-matter jurisdiction. However, no leave to amend is given to file a sixth amended complaint.

A separate order follows.

BY THE COURT:


_/s/ Edward G. Smith_____
EDWARD G. SMITH, J.